FILED
JUL 11 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES M. BAGENSTOSE,<br>Plaintiff<br>1019 Butterworth Lane<br>Upper Marlboro, Maryland 20774<br>301-336-0622<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br>Defendant<br>Office of the Attorney General<br>Civil Division<br>441 4th Street, N. W.<br>Washington, D. C. 20001<br><br>and<br><br>U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Defendant<br>Washington Field Office<br>1801 L Street, N. W., Suite 100<br>Washington, D. C. 20507 | CASE NUMBER 1:06CV01245<br><br>JUDGE: Royce C. Lamberth<br><br>DECK TYPE: Employment Discrimination<br><br>DATE STAMP: 07/11/2006<br><br>JURY ACTION |

COMPLAINT

(Title VII Complaint for Employment Discrimination and Retaliation)

FACTS OF THE CASE

1. Plaintiff, a white American, seeks redress for discrimination on account of race and for retaliation for his having filed a complaint with the District of Columbia Public Schools (DCPS) Equal Employment Opportunity (EEO) Office in September, 1994, suffered by him in violation of the laws of the United States in his capacity as an employee (teacher) of the DCPS. Specifically, Plaintiff alleges that he was afforded disparate treatment at the School Without Walls with respect to a black employee (another teacher) when accused of manhandling a student. (Plaintiff was later

1

exonerated from the charges.) Plaintiff received a two-week suspension without pay; whereas the black employee received no punishment, when he was accused of the same thing. (Plaintiff later recovered his lost pay.) The black teacher was eventually transferred to another school, but no evidence was presented to the District of Columbia Department of Human Rights and Local Business Development, later called Office of Human Rights (OHR), directly connecting his transfer to his alleged manhandling of a particular student. (The OHR said that the circumstances were different in the two cases, because the parents in the Plaintiff's case filed a written request for a formal investigation, whereas the parents in the other case did not. The request came, however, after the parents first met with the principal, Emily Crandall, who suggested that approach. Ms. Crandall didn't suggest that course of action to the other parents.) Ms. Crandall is black.

2. After filing a discrimination complaint with the DCPS EEO Office, Plaintiff was harassed with numerous complaints from parents, students, and other teachers at the instigation of Emily Crandall. Ultimately, Plaintiff was told to teach at but was not officially transferred to another school, Jefferson Junior High School, where at the end of the 1995-1996 school year Vera White, the principal there, was directed by the Deputy Director of Personnel, Clifton Taylor, to RIF (fire) him. This tactic made it possible for Emily Crandall at the School Without Walls, where the trouble began, to claim that she had nothing to do with the Plaintiff being RIFed. Even so, the OHR found in its Letter of Determination dated June 9, 2003, that the Plaintiff was a victim of retaliation for filing a discrimination complaint, when the DCPS moved him from the School Without Walls in

September, 1995, and when the DCPS RIFed him in June, 1996. It named the wrong complaint, however, as a means of taking the Plaintiff's victory away from him unjustly.

3. After the Plaintiff was RIFed he filed complaints with both the OHR and the D. C. Office of Employee Appeals (OEA). Both agencies continued the retaliation against the Plaintiff for filing a complaint by distorting facts, falsifying the testimonies of witnesses, stating falsehoods, suppressing evidence, ignoring the law or at least the parts they didn't like, and committing other deceptive and deceitful acts.

4. When the Plaintiff appealed aspects of his case to the D. C. courts, he received the same kind of treatment which he received at the OHR and OEA. D. C. Superior Court Judge Frederick H. Weisberg, for example, asserted that the Plaintiff voluntarily retired in order that he might avoid being RIFed, but the dates on the applicable documents show that the judge's version of events could not possibly have happened the way he described. The D. C. Court of Appeals, on the other hand, ruled in favor of the DCPS by ignoring the relevant case law, which states that an employer has to inform a terminated employee that if he retires he forfeits his right to appeal the termination and that an employer cannot mislead a terminated employee into retiring by giving him false or deceptive information. When the D. C. Court of Appeals made its ruling, it was fully aware that the DCPS had perpetrated a hoax on the Plaintiff by telling him that he had to file his retirement papers.

5. On July 5, 2006, Superior Court Judge Geoffrey M. Alprin issued his ruling supporting the OHR's implausible contention that the Plaintiff had to prove that Emily Crandall knew about the 1995 OHR complaint that

she continuously retaliated against the Plaintiff for his September, 1994, DCPS EEO complaint. His ORDER also falsely claims that the Plaintiff was suspended based on allegations that he had sexually abused a student, that the Plaintiff claimed that he was being retaliated against for his outspokenness, and that he chose to retire rather than to be RIFed. Judge Alprin adopted these allegations by the OHR as undisputed facts. Not once did the ORDER mention disparate treatment as the precipitating cause of all the trouble, nor did the ORDER address the list of questions the Plaintiff raised in his Petitioner's Reply to Respondent's Brief about the deceptive practices the OHR employed in the handling of his case. The ORDER made no mention of the OHR's failure to notify Emily Crandall about the Plaintiff's February 1995 OHR complaint. Either Judge Alprin knowingly distorted the facts, or he didn't familiarize himself with the case sufficiently to be able to fairly judge its merits.

6. After the OHR issued its Final Summary Determination, the Plaintiff asked the Washington Field Office of the U. S. Equal Employment Opportunity Commission (EEOC) to review the OHR's findings, which it is supposed to do. In the course of a conversation with David Gonzalez, State and Local Coordinator at the Washington Field Office, Mr. Gonzalez stated that the EEOC would not investigate any charges against the OHR, because to do so could impair his working relationship with the OHR. For the same reason he also said that the Plaintiff could not file a complaint against the OHR charging retaliation on behalf of his former employer, the D. C. Government.

7. Then Mr. Gonzalez issued a letter dismissing the Plaintiff's case on the deceptive grounds that the OHR found that the Plaintiff was retaliated

against when he was RIFed on June 18, 1996, thus falsely implying that he had already won his case at the OHR level. The Plaintiff did not win, however, because the OHR named the wrong complaint as the causative factor of the retaliation and told the Plaintiff that he had to prove that complaint to be the causative factor; which the OHR knew the Plaintiff couldn't do, because it wasn't the causative complaint. The letter from Mr. Gonzalez cited no other reason for dismissing the Plaintiff's case such as lack of evidence, nor did the Dismissal and Notice of Rights form indicate that the findings of the OHR had been adopted by the EEOC.

8. The Plaintiff then complained to Dana R. Hutter, Director of the EEOC Washington Field Office, about what Mr. Gonzalez had done, but Mr. Hutter said that the OHR findings had been reviewed by his office and accepted. Because the Plaintiff had previously submitted a comprehensive list of all the deceptive and improper actions of the OHR, it is difficult to see how the EEOC could in good faith accept the OHR's findings. This suggests complicity on the part of the EEOC to suppress wrongdoing on the part of the OHR, which sought by every possible means to protect the D. C. Government from financial liability for its acts of discrimination and retaliation. The review, moreover, was made by David Gonzalez, the man who told me that were the EEOC to go against the OHR, it could impair his working relationship with the OHR.

9. It is standard procedure for the adjudication agencies of the D. C. Government to dismiss the complaints of current and former employees of the government in this manner. It has the effect of discouraging other employees from making similar complaints to the OHR and the OEA, because they know that their chances for winning are very slim even if their cases

are strong. A recent U. S. Supreme Court decision (<u>Burlington Northern and Santa Fe Railway Co. v. White</u>, No. 05-259) found that illegal retaliation can take place if an employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

10. This suit is brought and jurisdiction lies pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5(f)(3), and 28 U.S.C. 1331 and 1343(a)(4).

11. Plaintiff received a Notification of Right to Sue from the U. S. Equal Employment Opportunity Commission on April 19, 2006. This complaint has been filed within ninety (90) days of receipt of the Notification of Right to Sue.

12. Plaintiff is a white citizen of the United States, who worked for the District of Columbia Public Schools from September, 1979, until June, 1996. Plaintiff resides at 1019 Butterworth Lane, Upper Marlboro, Maryland 20774. Plaintiff was a public school teacher for $43\frac{1}{2}$ years, 17 of which were in the service of the D. C. Public Schools.

13. Because the Plaintiff was so unfairly treated by the adjudicative officers in the employ of the Government of the District of Columbia, he respectfully requests a jury trial at which time he will present his documentation.

14. Plaintiff seeks an award of back pay, lost benefits, and court costs as well as punitive and compensatory damages for pain and suffering as determined by the jury. He would also like to be reinstated at the School Without Walls, where he has seniority rights.

15. Plaintiff has another civil action before this court. Judge John D.

Bates on January 12, 2004, dismissed without prejudice to reopening, upon written motion by the Plaintiff following resolution or other progress in two parallel proceedings, Civil Action No. 00-0228(JDB). Plaintiff hasn't done that, because he was waiting for a D. C. Superior Court decision in one of the parallel proceedings. Now that that has happened, it is the Plaintiff's hope that the two cases can be consolidated into one case. The Plaintiff so moves. (A copy of Judge Bates' ORDER is attached.)

16. At the present time the Plaintiff is representing himself in this matter. He hopes, however, that his union, the Washington Teachers' Union, will represent or at least assist him. There is, however, probably not much chance of that happening.

17. Plaintiff is a white citizen of the United States, who worked for the District of Columbia Public Schools from September, 1979, until June, 1996. Plaintiff resides at 1019 Butterworth Lane, Upper Marlboro, Maryland 20774. Plaintiff was a public school teacher for $43\frac{1}{2}$ years, 17 of which were in the service of the D. C. Public Schools.

COUNT 1

The OHR committed the following retaliatory acts to obstruct the Plaintiff's right to due process under the civil rights laws:

1. During the investigation of the February 23, 1995, discrimination complaint, the investigator wouldn't accept a signed admission by the Jefferson Junior High School principal, Vera White, that she hadn't followed the RIF procedures, as she was supposed to do, because her supervisor hadn't signed off on it.

2. The OHR reopened the February 23, 1995, complaint investigation twice.

The first time was when the Complainant cited some evidence and asked questions about it. When, after a period of several months, the District of Columbia Public Schools (DCPS) didn't respond to the Complainant's questions, the OHR reopened the case again--this time dropping the Complainant's questions and asking innocuous and leading questions instead.

3. The OHR closed its investigation of the February 23, 1995, complaint, when the Complainant was removed from the school, and told the Complainant that if there was any future discrimination, he would have to file a new complaint. This tactic blocked the Complainant from citing disparate treatment in his July 25, 1996, complaint as precipitating the September, 1994, EEO complaint and the subsequent retaliation which carried through to his being RIFed in June, 1996.

4. The OHR said that there was no disparate treatment to be found in the Complainant's February 23, 1995, complaint, because the circumstances were different. A black teacher received much less punishment for the same accusation made against him as was made against the Complainant, who was later exonerated. The reason the circumstances were different, according to the OHR, was that the complaining parents of the black teacher's student didn't go to higher authority in the DCPS as did the parents of the Complainant's student, ignoring the fact that the parents of the Complainant's student were directed to go to the higher authority by the offending principal, Emily Crandall, as part of her disparate treatment.

5. With respect to the February 23, 1995, complaint the OHR made part of the record many statements from parents, students, and other teachers defaming the Complainant and making him appear to be a bad and deficient

teacher. These statements were orchestrated by Emily Crandall as part of her effort to thoroughly discredit the Complainant in response to his discrimination complaint. Only one of the statements was notarized, and it also made false accusations. The OHR took the statements at face value without making any effort to see if they were true or not.

6. The Letter of Determination for the July 25, 1996, complaint states that the OHR found that the Complainant was a victim of retaliation for filing his February 1995 complaint with the OHR. The Complainant, however, never made that claim and offered proof that he claimed retaliation for his September, 1994, DCPS EEO complaint instead. The Complainant also offered proof that Emily Crandall knew about the September, 1994, DCPS EEO complaint and retaliated against it. Nevertheless, the OHR insisted that the Complainant had to prove that the principal knew about the February 1995 OHR complaint and retaliated against it. This was a ludicrous demand, because the February 1995 OHR complaint was about the principal's retaliation for the September, 1994, DCPS EEO complaint.

7. A hearing was held on the issue, but the Complainant was not allowed to explain that the Letter of Determination cited the wrong complaint as the causative factor for the retaliation. This is because the OHR said that the hearing was limited. A limited hearing is a device which the OHR employs when it wishes to exclude testimony that it doesn't want to hear or evidence which it doesn't want to see.

8. The OHR knew that the Complainant could not prove that Emily Crandall knew about the discrimination complaint. This is because the OHR employed another device whereby the perpetrator of the discrimination and/or retaliation is not notified about the complaint. Instead, the complaint

9

goes to another party, so that the perpetrator can say that he or she never received the complaint or was even told about it.

9. At the hearing Emily Crandall lied, when the attorney representing her asked whether she knew about the September, 1994, EEO complaint. She said that she did not. The Complainant wanted to enter evidence that the principal had committed perjury, but the Hearing Examiner wouldn't let him do it. Thus, the Complainant was not permitted to impeach the only witness the DCPS had to support its case.

10. Before the hearing took place the Hearing Examiner directed the Complainant to submit a statement explaining his positions. The Hearing Examiner immediately forwarded the statement to the attorney for the DCPS. The Hearing Examiner did not, however, ask the attorney for the DCPS to submit a statement for her to submit to the Complainant.

11. The Hearing Examiner blatantly lied in her report as did the OHR in its <u>Determination on Complainant's Request for Reconsideration</u> that the Complainant asserted that he was retaliated against for filing the February 1995 OHR complaint

12. The OHR says that the Complainant should have questioned at an earlier date the OHR's statement that the retaliation came from the February 1995 complaint. It doesn't mention, however, that OHR officials told him on several occasions that the investigation sometimes turns up information about which a Complainant is unaware. Thus, the OHR led the Complainant to believe that it had evidence that the principal knew about the 1995 OHR complaint as well as the September, 1994 EEO complaint.

COUNT 2

The EEOC aids and abets the OHR's efforts to thwart the civil rights laws in the following ways:

1. The EEOC will not investigate any discrimination or retaliation charges against the OHR, especially when the OHR is retaliating on behalf of the D. C. Government against one of its employees, because the EEOC fears that such an investigation could impair its working relationship with the OHR.
2. Accordingly, when the EEOC reviews an OHR case, it will find even the most egregious acts on the part of the OHR to be acceptable. Such egregious acts include the following:
    a. When the D. C. Government plans a RIF, it develops rules that are so perfectly clear that no reasonable employee will seek interpretation through counseling. However, to trick the employees the D. C. Government withholds the fact that retirement or resignation forfeits the right of an employee to appeal his termination. Then the D. C. Government misleads the employees into believing that either they must retire or they can retire without forfeiting any right. When, however, a terminated employee appeals his RIF, he is told that he forfeited his right of appeal by "voluntarily" retiring and should have sought counseling. There are precedent court cases which have ruled against the practice, but both the OHR and the OEA ignore them. The tactic works, as may be seen by the fact that no retired 1996 D. C. RIFed teacher won his or her appeal.
    b. When an employee files a discrimination charge against an agency of the D. C. Government, he may suffer retaliation for quite awhile before something really drastic occurs. Then, when the employee files a new complaint about the retaliation suffered for the first

complaint, the OHR forgets all about the first complaint and tells the employee that he must prove retaliation against the second complaint. In other words, the first complaint is wiped out (i.e., suppressed), and the employee is told that he must prove retaliation for complaining about retaliation to the first complaint, which was never resolved. This is because, the OHR argues, the second complaint is more proximate in time to the drastic event. Of course it is, but that doesn't mean it is the cause of the retaliation, which began with the first complaint.

c. The OHR makes sure that the employee can't prove retaliation for the second complaint by not informing the object of the complaint that a complaint was filed. By sending the complaint to another party, the OHR allows the perpetrator to claim ignorance of the complaint. Meanwhile, the employee is left believing that the OHR had properly notified the perpetrator of the offenses that a complaint had been filed. This practice is just a trick employed by the OHR to help protect the D. C. Government against discrimination charges.

d. Another device which the OHR uses to thwart the civil rights laws is the "limited" hearing, whereby the Complainant is told that he cannot present his case for substantiating his complaint, but must prove an implausible assertion that the OHR has contrived but which it falsely attributed to the Complainant.

e. Still another devious tactic is to close a discrimination/retaliation complaint before it has run its full course. This prevents the victim from tying the ultimate retaliation to the initial

discriminatory act, which set off the entire sequence of events in the first place.

    f. One of the nastiest tricks that can be played on a complaining D. C. Government employee is to malign him through the use of falsehoods which denigrate his character. An excellent example of that approach is Judge Alprin's ORDER, which illustrates the futility of a D. C. Government employee appealing an OHR or OEA decision to a D. C. court.

3. By turning a blind eye to all the deceptive and deceitful acts practiced by the OHR when handling complaints against the D. C. Government from its employees, the EEOC is failing to enforce the civil rights laws and is denying the employees their right to protection from discrimination and retaliation.

REQUESTED RELIEF

As stated earlier, Plaintiff seeks an award of back pay, lost benefits, and court costs as well as punitive and compensatory damages for pain and suffering as determined by the jury. He would also like to be reinstated at the School Without Walls, where after being made whole he will have seniority rights. He would also like the Court to order the OHR and the OEA to cease and desist practicing the egregious acts discussed in this complaint, and he would like the Court to order the EEOC to enforce the civil rights laws irrespective of who is violating them.

_____<br>Charles M. Bagenstose

REQUEST FOR SUMMONSES FOR THE FOLLOWING PERSONS

Mayor Anthony A. Williams
Office of the Secretary
Government of the District of Columbia
1350 Pennsylvania Avenue, N. W., Room 419
Washington, D. C. 20004

Ms. Darlene Fields
Office of the Attorney General
Civil Division
Government of the District of Columbia
441  4th Street, N. W., Suite 600S
Washington, D. C. 20001

Mr. Dana R. Hutter, Director
U. S. Equal Employment Opportunity Commission
Washington Field Office
1801  L Street, N. W., Suite 100
Washington, D. C. 20507

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Charles H. Bagenstose<br>1019 Butterworth Lane<br>Upper Marlboro, MD 20774 | From: | Washington Field Office - 570<br>1801 L Street, N.W.<br>Suite 100<br>Washington, DC 20507 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-1996-00203 | David Gonzalez,<br>State & Local Coordinator | (202) 419-0714 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*   **Administrative Closure**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Dana R. Hutter* (signature)

Dana Hutter,
Director

April 17, 2006

*(Date Mailed)*

Enclosure(s)

cc:
D.C. PUBLIC SCHOOLS
415 12th Street, N.W.
Washington, DC 20004

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES M. BAGENSTOSE,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA PUBLIC SCHOOLS,<br><br>Defendant. | Civil Action No. 00-0228 (JDB) |

## ORDER

In light of two parallel proceedings – an action in the Superior Court of the District of Columbia and an administrative proceeding before the District of Columbia Human Rights Commission – the Court stayed this matter on August 22, 2003, with the parties' joint consent and after several status conferences. The Court has since held two additional status conferences in this case. At neither conference have the parties expressed a readiness to move forward in this action, nor have they been able to provide an estimate as to when the parallel proceedings will be concluded. Accordingly, pursuant to the status conference held on this date and discussion with the parties, it is this 12th day of January, 2004, hereby

ORDERED that this case this case is DISMISSED WITHOUT PREJUDICE to reopening upon written motion by the plaintiff following resolution or other progress in the parallel proceedings; and it is further

-1-

ORDERED that this order shall be effective on January 23, 2004, unless either party files a written objection on or before that date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Copies to:

**Charles M. Bagenstose**
1019 Butterworth Lane
Upper Marlboro, MD 20774
(301) 336-0622

**Melvin W. Bolden, Jr.**
OFFICE OF CORPORATION COUNSEL, D.C.
441 Fourth Street, NW
6th Floor, North
Washington, DC 20001-4600
(202) 724-6650
Email: melvin.bolden@dc.gov