## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

Charles M. Bagenstose,       )
               )
       Plaintiff,      )
               )     Civil No. 06-1245 (RCL)
     v.          )
               )
District of Columbia, et al.,    )
               )
       Defendants.    )
_____)

### DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia ("the District"), by and through undersigned counsel, hereby asks this Court to grant summary judgment in the District's favor. A Memorandum of Points and Authorities and a proposed order is attached hereto.

As this is a dispositive motion, undersigned counsel is not required to seek plaintiff's consent to the relief requested herein.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Nicole Lynch /s/*
NICOLE LYNCH [471953]
Section Chief
General Litigation Section II

*/s/ Dana K. DeLorenzo /s/*
DANA K. DELORENZO [468306]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
Dana.delorenzo@dc.gov

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on September 18, 2006, a copy of the foregoing Motion, Memorandum of Points and Authorities and proposed order was mailed postage prepaid to:

Charles M. Bagenstose
1019 Butterworth Lane
Upper Marlboro, MD 20774

*/s/ Dana K. DeLorenzo /s/*
Dana K. DeLorenzo
Assistant Attorney General

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Charles M. Bagenstose, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil No. 06-1245 (RCL)** |
| v. | ) | |
| | ) | |
| District of Columbia, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia ("the District"), by and through undersigned counsel, hereby asks this Court to dismiss the plaintiff's Complaint for the following reasons:

(1) the plaintiff's Title VII claim with respect to his termination from District of Columbia Public Schools is barred due to *res judicata*;

(2) the plaintiff's Title VII claim with respect to his re-assignment from School Without Walls to Jefferson Junior High School is barred because it is a lateral transfer and, therefore, not an adverse action; and

(3) the plaintiff's procedural due process claim against the Office of Human Rights ("OHR") is barred because the District has immunity for quasi-judicial functions, the plaintiff has not asserted a viable property interest in an OHR probable cause determination and he has obtained all of the process that he is due.

### *Background*

On July 11, 2006, the plaintiff filed his Complaint in the instant case. The plaintiff titles his Complaint as one based on Title VII for discrimination based on race (white) and retaliation.

3

However, he appears to allege both a Title VII claim and a substantive due process claim against the District. Curiously, though, the plaintiff styles Count I of the Complaint as a procedural due process claim against the Office of Human Rights ("OHR"), who is not a party to this case. He also styles Count II as a claim of a civil rights violation against the Equal Employment Opportunity Commission ("EEOC").

*Preliminary Facts*

The plaintiff, who is white, alleges that he began working for the District of Columbia Public Schools ("DCPS") in 1979. At some point during the 1994-1995 school year, while the plaintiff was working at School Without Walls, he alleged that he was disparately treated, vis a vis a black teacher, when accused of "manhandling" a student. (Complaint at ¶ 1.) The plaintiff allegedly received a two-week suspension without pay but was later exonerated. (Complaint at 2, ¶ 1.) The plaintiff admits in his Complaint that he received his pay back from the two-week suspension. (Complaint at 2, ¶ 1.) The plaintiff alleges that the principal of the school, Emily Crandall, who is black, suggested to the parents of the student submit written request for a formal investigation. (Complaint at ¶ 1.)

*February 23, 1995 OHR Complaint*

The record reflects that the plaintiff filed an OHR Complaint on February 23, 1995, alleging race and age discrimination (hereinafter, "1995 OHR Complaint") for his satisfactory performance ratings during the 1993-94 and 1994-95 school years while he was at the School Without Walls. (June 30, 2005, Determination on Complainant's Request for Reconsideration at 2, attached hereto as Exhibit A.) The plaintiff alleged in his Complaint that OHR closed its investigation of the 1995 OHR Complaint and found there was no disparate treatment based on these allegations. (Complaint at 8 ¶ 3-4.)

4

*Plaintiff's Re-Assignment and Termination During the 1995-1996 School Year*

After the formal investigation, the plaintiff alleges that he was "told to teach at but not officially transferred to another school," Jefferson Junior High School. (Complaint at ¶ 2.) This re-assignment occurred on approximately September 1, 1995. (Discrimination Complaint at ¶ 3(c), Docket No. 96-263-DC9CN, attached hereto as Exhibit B.) On or around June 19, 1996, the plaintiff alleges that he was notified that he would be RIFed[1] or terminated. (See June 19, 1996 Letter from DCPS Office of Fiscal and Personnel Services, attached hereto as Exhibit C.) The plaintiff was informed that the termination would be effective on July 19, 1996. (Exhibit C.)

*Office of Employee Appeals*

After the plaintiff learned of the RIF, he filed a complaint with the Office of Employee Appeals ("OEA"). He also submitted a retirement application and his retirement became effective on August 27, 1996. (*See Bagenstose v. District of Columbia Office of Employee Appeals*, 888 A.2d 1155, 1157 (D.C. 2005), attached hereto as Exhibit D.) At OEA, the plaintiff challenged the voluntariness of his retirement, claiming he was not given notice that retirement would waive his right to appeal the RIF. (October 23, 2001 Initial Decision, OEA Matter No. 2401-0224-96, attached hereto as Exhibit E.) After an OEA hearing, Administrative Judge Joseph E. Lim, Esq. rejected the plaintiff's claim that his retirement was involuntary or that he was not given notice that by retiring, he waived his right to appeal the RIF. (Exhibit E, generally.) The administrative judge dismissed the case.

The plaintiff appealed this decision to the OEA Board, which affirmed the administrative judge's order. (*Bagenstose*, 888 A.2d at 1157; Exhibit D.) The plaintiff subsequently filed a petition in Superior Court. Judge Weisberg denied the plaintiff's petition for review and his

---

[1] The term "RIF" means a reduction in force.

motion for reconsideration.  (*Bagenstose*, 888 A.2d at 1157; Exhibit D.)  The Court of Appeals subsequently addressed the plaintiff's allegation that his retirement "was involuntary due to duress and misrepresentation."  (*Bagenstose*, 888 A.2d at 1157; Exhibit D.)  The Court of Appeals concluded that Judge Weisberg did not err when he affirmed the OEA Board's decision that the plaintiff failed to prove that his retirement was involuntary.  (*Bagenstose*, 888 A.2d at 1157-58; Exhibit D.)  In doing so, the court noted that "a retirement request initiated by an employee is presumed to be a voluntary act."  (*Bagenstose*, 888 A.2d at 1157-58; Exhibit D.)

*Plaintiff's July 25, 1996 OHR Complaint*

In addition to filing a complaint with OEA, the plaintiff also filed another complaint with OHR on July 25, 1996 ("1996 OHR Complaint").  (Exhibit B.)  In it, he alleged discrimination based on race and age as well as retaliation for filing complaints.[2]  *Id.*  Specifically, the plaintiff alleged that such discrimination and retaliation was manifested in his re-assignment to Jefferson Junior High School and subsequent RIF.

In its June 9, 2003, Letter of Determination with respect to the plaintiff's 1996 OHR Complaint, OHR informed the plaintiff that his discrimination claim related to his 1993-1994 and 1994-1995 "satisfactory" performance ratings were "dismissed as untimely."  (June 9, 2003 Letter of Determination at 7, attached as Exhibit F.)  The Letter of Determination also concluded that the plaintiff was not a victim of race or age discrimination:

> 1.    Complainant was not a victim of discrimination on the basis of his age (66) and race (White) when he was reassigned from School Without Walls to Jefferson Junior High School on September 1, 1995.
> 2.    Complainant was not a victim of discrimination on the basis of his age (66) or race when Respondent designated him to be RIFed on June 18, 1996.

(Exhibit F at 7-9.)

---

[2] Upon information and belief, the plaintiff makes no mention of an age discrimination claim in the instant Complaint, referring only to claims of race and retaliation.  (Complaint at 1.)

However, OHR determined that there was probable cause to believe that:

1.      Complainant was a victim of retaliation for filing his February 1995 complaint with the OHR when Respondent transferred him from School Without Walls in September 1995.

2.      Complainant was a victim of retaliation for filing his February 1995 complaint with the OHR when Respondent designated Complainant to be riffed on June 18, 1996.

(Exhibit F at 13.)

According to the record, on July 13, 2004, a limited formal hearing was held before an independent hearing examiner to address the primary issue of "whether anyone at the School Without Walls had knowledge of Complainant's February 1995 complaint." (Exhibit A at 2.) On December 17, 2004, the Director of OHR reversed the probable cause findings in the June 9, 2003, Letter of Determination finding related to the transfer and RIF. (Exhibit A.) According to the record, "retaliation did not exist when these incidences occurred because the Principal of the School Without Walls [Emily Crandall] was not aware of the February 23, 1995 complaint filed with the OHR." (Exhibit A at 3.)

The plaintiff filed a request for reconsideration. On June 30, 2005, OHR issued a Determination on Complainant's Request for Reconsideration. (Exhibit A.) Here, OHR affirmed its prior reversal of the probable cause findings. (Exhibit A at 4.) Specifically, it concluded that the complainant/plaintiff did "not proffer new evidence, nor [did] he demonstrate a misstatement of fact or a misapplication of law." (Exhibit A at 3.) It was OHR's final decision that there was no probable cause to support any of the plaintiff's allegations.

On July 18, 2005, the plaintiff filed a Petition for Review of Agency Decision in the Superior Court for the District of Columbia. (Petition for Review, Civil Action No. 05-5506, attached hereto as Exhibit G.) In his Petition (and related attachments), the plaintiff alleged that OHR violated the D.C. Human Rights Act when it denied him his "right to protection from

discrimination … and from retaliation …" (Exhibit G.) In that Statement, the plaintiff requested

that the Court "direct the OHR to correct its finding to make it agree with my complaint and to

honor the evidence which exists to show that the principal retaliated against me for my

September, 1994, EEO complaint rather than the February, 1995 OHR complaint." (Exhibit G,

Statement at 1.).

In its July 6, 2006, Order Affirming Determination on Complainant's Request for

Reconsideration, the Honorable Geoffrey Alprin denied the plaintiff's request to set aside OHR's

June 30, 2005, decision. (Order Affirming Determination on Complainant's Request for

Reconsideration at 8, Civil Action No. 05-CA-5506 (MPA), attached hereto as Exhibit H.) The

Court found that "OHR's final probable cause decisions … [were] … based on substantial

evidence and not clearly erroneous as a matter of law." (Exhibit H at 7.) Specifically, the Court

found that OHR's determination, that the "only protected act that could have prompted

Bagenstose's transfer and rif was the filing of the 1995 Complaint" and any earlier complaint

was "too far removed in time from the transfer to raise a suspicion," was "not clearly erroneous

as a matter of law." (Exhibit H at 7.) Additionally, the Court found that Ms. Crandall's live

testimony at the limited hearing, which was credited by the Hearing Examiner, is "substantial

evidence to support the OHR's conclusion that SWW staff did not know about the 1995

Complaint." (Exhibit H at 8.) Therefore, the Court refused to set aside OHR's final

determination.

The plaintiff also alleged that he received a Notification of Right to Sue from the U.S.

Equal Employment Opportunity Commission on April 19, 2006. This document, which is

attached to the plaintiff's complaint, indicates that the EEOC closed its file on this charge due to

"administrative closure."[3]

### Standard of Review

Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the party moving for summary judgment has both the burden of demonstrating the absence of any material facts as well as the right to judgment as a matter of law, *Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993), the movant is not obligated to present supporting evidence. Instead, the moving party need only assert that there is a lack of necessary evidence to support plaintiff's case. At that point, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.; Beard v. Area Transit Authority,* 631 A.2d 387, 390 (D.C. 1993). Theoretical speculations, unsupported assumptions, and conclusory allegations do not rise to the level of a genuine issue of fact. *Id*. By this burden of proof, the plaintiff's claims against the District cannot stand. As such, summary judgment should be granted in the District's favor.

### Argument

Although not a model of clarity, plaintiff's *pro se* Complaint appears to allege two broad claims against the District of Columbia.[4] First, the plaintiff appears to allege a Title VII claim for DCPS's re-assignment and termination of the plaintiff in 1996. Second, the plaintiff appears

---

[3] The plaintiff also alleged that he has another case pending before the Court, Civil Action No. 00-0228 (JDB). He claims that on January 12, 2004, that case was dismissed without prejudice subject to re-opening "upon written by the Plaintiff following resolution or other progress in two parallel proceedings." (Complaint at ¶ 15.) However, in the Complaint, the plaintiff requested that the two cases could be consolidated. (Complaint at ¶ 15.) This file is not available through the Court's electronic filing and undersigned counsel has not been able to view the complaint. However, a new Complaint is not an appropriate forum to request consolidation of cases.

[4] To the extent that the Court identifies any additional causes of action against the District in the plaintiff's Complaint, the District would respectfully request an opportunity to address such claims in a subsequent filing.

to allege a procedural due process claim, for OHR's handling of his discrimination and retaliation claim (1996 OHR Complaint). For the reasons described below, both of these claims are barred.

## I. THE PLAINTIFF'S TITLE VII CLAIMS ARE BARRED.

The plaintiff continues to challenge his re-assignment from School Without Walls to Jefferson Junior High School during the 1995-96 school year and his termination at the end of that school year. However, the plaintiff cannot succeed on either claim. Any claim with respect to his termination is barred by *res judicata*. Additionally, his re-assignment to Jefferson Junior High School is a lateral transfer and is not an adverse employment or personnel action under Title VII.

### A. Any Claim Regarding Plaintiff's 1996 Termination is Barred by *Res Judicata*.

The Superior Court for the District of Columbia has already adjudicated the pertinent issues related to the plaintiff's 1996 termination and his Title VII claim. Therefore, the plaintiff is precluded from bringing this claim by the doctrine of *res judicata*, which prevents "repetitious litigation" involving the same causes of action or the same issues. *NextWave Personal Communications, Inc. v. FCC*, 254 F.3d 130, 142 (D.C. Cir. 2001), *affirmed in relevant part*, 537 U.S. 293 (2003). *See also Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) (*res judicata* exists in part to shield litigants from duplicative and vexatious litigation).[5]

*Res judicata* consists of claim preclusion and issue preclusion. *NextWave*, 254 F.3d at 143. Under claim preclusion, a final judgment on the merits in a prior suit involving the same parties (or their privies) bars subsequent suits based on the same cause of action. *NextWave*, 254 F.3d at 143

---

[5] *See also Montana v. United States*, 440 U.S. 147, 153–54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (footnote omitted); *Southern Pacific R.R. Co. v. United States*, 168 U.S. 1, 48 (1897) (enforcement of preclusion "is essential to the social order … .").

(*citing Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Claim preclusion applies even if an appeal is

pending in the prior action. *See Yamaha Corp. of America v. United States*, 961 F.2d 245, 255 (D.C.

Cir. 1992) ("collateral estoppel may be applied to a trial court finding even while the judgment is

pending on appeal") (*quoting Southern Pac. Communications Co. v. AT&T,* 740 F.2d 1011, 1018

(D.C. Cir. 1984), *cert. denied*, 470 U.S. 1005 (1985)).

     To establish issue preclusion, a party must show: (1) that the same issue now being raised

was previously contested by the parties and submitted for judicial review, (2) that the issue was

actually and necessarily determined by a court of competent jurisdiction in the prior case, and (3)

preclusion would not work a basic unfairness to the party bound by the first decision. *Beverly*

*Health & Rehabilitation Svcs, Inc. v. NLRB*, 317 F.3d 316, 322 (D.C. Cir. 2003) (*citing Kremer*

*v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)). *See also Allen*, 449 U.S. at 94 ("once

a court has decided an issue of fact or law necessary to its judgment, that decision may preclude

relitigation of the issue in a suit on a different cause of action involving a party to the first

case.").

     Here, the plaintiff's Title VII claim is barred by issue preclusion (also known as collateral

estoppel), preventing subsequent relitigation of issues resolved in a prior suit, *regardless* of whether

the later suit is based on the same cause of action or the same opposing party.  *NextWave*, 254 F.3d

at 147.  As indicated, the plaintiff challenged the voluntariness of his retirement, or as the plaintiff

alleges, his "termination," through the administrative process available at OEA.  From a review of

the record, the plaintiff's claim regarding the voluntariness of his retirement was heard at the

administrative level, through the OEA and the OEA Board, and then the Superior Court of the

District of Columbia and the District of Columbia Court of Appeals.  (Exhibit D.)  On December 8,

2005, the District of Columbia Court of Appeals issued its decision in *Bagenstose v. District of*

*Columbia Office of Employee Appeals*, 888 A.2d 1155 (D.C. 2005), which upheld the determination

that the plaintiff's retirement was voluntary.

For issue preclusion to apply, the issue must have been "actually and necessarily

determined" by a court of competent jurisdiction in the first action. *NextWave*, 254 F.3d at 147

(*quoting Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C. Cir. 1992)). The issue of his

retirement—and the voluntariness of that retirement—bears directly on the plaintiff's ability to

challenge his RIF or any claim that he was terminated improperly. If his retirement was

voluntary, as the Courts have uniformly concluded, then he cannot challenge the RIF or

termination. This is especially so where, as here, the issue raised here and in the prior cases stem

from the same facts and related legal theories. *See Allen*, 449 U.S. at 94; *Dynaquest Corp. v.*

*United States Postal Svc.*, 242 F.3d 1070, 1076 n.5 (D.C. Cir. 2001) (final judgment in another

court *precludes* parties (or their privies) from relitigating issues that were or could have been

raised in that action, regardless of whether that action was administrative or judicial, and *res*

*judicata* applies to questions of law as well as fact); *North v. Walsh*, 881 F.2d 1088, 1093 (D.C.

Cir. 1989).

Even if the plaintiff had attempted to raise an issue for the first time *here*, he would still be

precluded from doing so:

> if a new legal theory or factual assertion put forward in the second action is
> related to the subject-matter and relevant to the issues that were litigated and
> adjudicated previously, so that it *could* have been raised, the judgment is
> conclusive on it despite the fact that it was not in fact expressly pleaded or
> otherwise urged.

*Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002) (*quoting Yamaha Corp. of Am. v. United States*,

961 F.2d 245, 257–58 (D.C. Cir. 1992) (emphasis in original)).

In sum, in the instant litigation, the issue raised by the plaintiff regarding his termination relates directly to the issue previously contested by the plaintiff regarding the voluntariness of his termination, that issue was decided by a court of competent jurisdiction (or several courts), and preclusion would not be unfair to the plaintiff, as he brought both suits and had a full and fair opportunity to litigate the same issues in Superior Court. The plaintiff, therefore, is precluded from relitigating the issue of his termination here. The District is therefore entitled to judgment on its behalf on any claim relating to the plaintiff's termination.

### B. The Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted With Respect to his Claim of a Title VII Violation Based on His Re-Assignment Because a Lateral Transfer is Not An Adverse Action.

In the Complaint, the plaintiff alleges he "was told to teach at but was not officially transferred to another school, Jefferson Junior High School." (Complaint at ¶ 2.) However, the plaintiff cannot recover under Title VII for this re-assignment because it is a lateral transfer and is not an adverse action.[6]

In *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), the District of Columbia Circuit re-affirmed the standard when a plaintiff makes a disparate treatment claim or a retaliation claim pursuant to Title VII, as Mr. Bagenstose does in the instant case:

> … to state a prima facie claim of disparate treatment discrimination, the plaintiff must establish that (1) she is a member of a **…** protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. For retaliation claims, such as the one Brown alleges, the prima facie requirements are slightly different. The plaintiff must show "1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two."

*Id.* at 452. To that end, it is clear that a plaintiff must prove that he suffered an adverse employment

---

[6] The plaintiff's two-week suspension is also not an adverse action because he admits that he was exonerated and all of his pay was restored. Notably, the Complaint does not appear to allege a cause of action based on this suspension.

or personnel action.

> However, the *Brown* court specifically held that a lateral transfer is not an actionable injury.

> A plaintiff … who is made to undertake or who is denied a lateral transfer--that is, one in which she suffers no diminution in pay or benefits--does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457.  Accordingly, as the plaintiff has not alleged that his re-assignment from School Without Walls to Jefferson High School resulted in any diminution in pay or benefits or that he suffered any other materially adverse consequences, the lateral transfer is not an actionable injury, and the plaintiff has not met his burden of proof of disparate treatment for his transfer.

## II.    THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM IS BARRED.

The Complaint appears to allege a procedural due process violation pursuant to the Fifth Amendment (*See* Complaint at 7 ("OHR committed the following retaliatory acts to obstruct the Plaintiff's right to due process under the civil rights laws").)  However, the plaintiff's claim is barred because the District has quasi-judicial immunity for the acts of OHR, the plaintiff cannot assert a property interest in an OHR probable cause determination, a probable cause determination is discretionary and the plaintiff already received the process that he is due.

### A.  The District of Columbia is Entitled to Absolute Immunity Based on the Quasi-Judicial Function Performed by OHR.

The plaintiff's due process claim against OHR must be dismissed because the Office of Human Rights performs a quasi-judicial function and the District is entitled to immunity.  As a class, judges have long enjoyed absolute immunity from any lawsuit arising out of their judicial functions.  *Forrester v. White*, 484 U.S. 219, 225 (1988).  This immunity has been expanded to include other government officials who perform judicial or "quasi-judicial" functions.  *Thomson v.*

*Duke*, 882 F.2d 1180, 1183 (7th Cir. 1989). In fact, the D.C. Circuit and other circuits have acknowledged a variety of government functions that warrant absolute immunity:

> Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process. These have included prosecutors, *Imbler v. Pachtman, 424 U.S. 409, 430, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976)*; law clerks, *Sindram v. Suda, 300 U.S. App. D.C. 110, 986 F.2d 1459, 1460 (D.C. Cir. 1993)*; probation officers, *Turner v. Barry, 272 U.S. App. D.C. 377, 856 F.2d 1539, 1541 (D.C. Cir. 1988)*; a court-appointed committee monitoring the unauthorized practice of law, *Simons v. Bellinger, 207 U.S. App. D.C. 24, 643 F.2d 774, 779-82 (D.C. Cir. 1980)*; a psychiatrist who interviewed a criminal defendant to assist a trial judge, *Schinner v. Strathmann, 711 F. Supp. 1143 (D.D.C. 1989)*; persons performing binding arbitration, *Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir. 1990)*; and a psychologist performing dispute resolution services in connection with a lawsuit over custody and visitation rights, *Howard v. Drapkin, 222 Cal. App. 3d 843, 271 Cal. Rptr. 893, 905 (Ct. App. 1990)*.

*Id.*

The United States District Court for the District of Columbia has affirmed the proposition that the Office of Human Rights performs a quasi-judicial function. In *Crew v. Barry*, 1979 U.S. Dist. LEXIS 9582, the plaintiff filed a suit against former Mayor Marion Barry, the D.C. Commission on Human Rights and the D.C. Office of Human Rights, claiming that the Mayor and city agencies improperly handled his discrimination complaint against a private employer. *Id.* at *1. Specifically, the plaintiff alleged that the Office of Human Rights failed to include his sex discrimination claim (including only his sexual orientation discrimination claim) as well as other civil rights violations not described in the opinion. The United States District Court for the District of Columbia found that,

> The District of Columbia is immune from suit based upon the actions set forth in the [complaint] as the basis of this suit. Plaintiff complains of actions performed by the Human Rights Office and Commission in a quasi-judicial proceeding. Because of the nature of this activity, such officials must be free from the threat of suit in their performance of the lawful functions of the position.

*Id.* at *3.  The Honorable D.J. Parker ultimately dismissed the plaintiff's complaint with prejudice. *Id.* at *5-6.

### B.  The Plaintiff's Due Process Claim Must be Dismissed Because the Plaintiff Had No Property Interest in an OHR Probable Cause Determination.

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property ... interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594, 598 (D.C. Cir. 1993) (*citing Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Based on the facts provided by the plaintiff in the Complaint, the plaintiff has not alleged any deprivation of any constitutionally protected rights.  As previously described, the plaintiff can point to no "entitlement" of which he been denied, let alone denied without due process.

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) (further citations omitted)). Thus, to the extent that the plaintiff claims a right to a District-of-Columbia-created procedure, the deprivation of that "right" is not of constitutional dimension, if (as the District asserts above), the plaintiff has no interest at stake independent of any claimed procedure.

Simply, the plaintiff is not entitled to a probable cause determination by OHR for his 1996 OHR Complaint. Indeed, there is no requirement in the D.C. Code that the Office of Human Rights *must* make a probable cause determination. The Office of Human Rights is charged with, *inter alia*, "[r]eceiv[ing], review[ing], and investigat[ing] complaints of unlawful discrimination in employment, housing, public accommodations, or educational institutions." D.C. Code § 2-1411.03(3) (2006). With respect to investigation, OHR "shall determine whether, in accord with its own rules, it has jurisdiction; and if so, whether there is probable cause to believe that the respondent has engaged or is engaging in an unlawful discriminatory practice." D.C. Code § 2-1403.05(b) (2006). Moreover, there are provisions for when no probable cause is found: "If the Office [of Human Rights] finds, with respect to any respondent, that it lacks jurisdiction or that probable cause does not exist the Director forthwith shall issue and cause to be served on the appropriate parties, an order dismissing the allegations of the complaint." D.C. Code § 2-1403.05(c) (2006). This language merits the conclusion that a probable cause determination is discretionary and based on the evidence before OHR. Accordingly, the plaintiff cannot claim any entitlement to such a determination for his 1996 OHR Complaint.

Moreover, assertion of a procedural due process claim requires a plaintiff to identify the process that is due. *Doe by Fein*, 93 F.3d at 869–70. However, he cannot successfully make such a claim because, in the absence of any additional facts provided by the plaintiff, there is a process available to the plaintiff for filing a complaint, requesting an OHR probable cause determination and challenging the absence of such a determination. D.C. Code § 2-1401 *et. seq.* In fact, the complaint is filled with examples of the plaintiff utilizing the various administrative and judicial avenues available to him to challenge OHR findings based on his 1996 OHR Complaint. The plaintiff's dissatisfaction regarding the resolution of his 1996 OHR Complaint, however, is not

equivalent to the absence of a process.

Moreover, the Superior Court for the District of Columbia has already affirmed that OHR procedures with respect to the plaintiff's 1996 OHR Complaint were "based on substantial evidence and not clearly erroneous as a matter of law." (*See* Background section; Exhibit H.) Ultimately, the plaintiff cannot claim that he was denied procedural due process because he has not asserted a property interest in an OHR probable cause determination in his 1996 OHR Complaint. Nor does he identify any process that has been lacking and/or violated. Accordingly, any such claim regarding OHR's handling of his 1996 OHR Complaint, which forms the basis of his procedural due process claim, should be dismissed with prejudice.

WHEREFORE, the District respectfully requests that the Court grant summary judgment in favor of the District.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Nicole Lynch /s/*
NICOLE LYNCH [471953]
Section Chief
General Litigation Section II

*/s/ Dana K. DeLorenzo /s/*
DANA K. DELORENZO [468306]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
Dana.delorenzo@dc.gov

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Charles M. Bagenstose, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil No. 06-1245 (RCL)** |
| v. | ) | |
| | ) | |
| District of Columbia, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Comes now, the defendant, by and through undersigned counsel and pursuant to F.R.C.P. 56, and hereby submits the following statement of material facts as to which there is no genuine issue:

1. The plaintiff filed a 1995 OHR complaint, which was dismissed after OHR determined that there was no disparate treatment by DCPS toward the plaintiff. (Complaint at 8, ¶ 3-4.)

2. For the 1995-1996 school year, the plaintiff was re-assigned from School Without Walls to Jefferson Junior High School. (Complaint at 2.)

3. The plaintiff did not allege a loss in pay or benefits or any other materially adverse consequences as a result of the re-assignment from the School Without Walls to Jefferson Junior High School. (Complaint, generally.)

4. On or around June 19, 1996, the plaintiff learned that he would be RIFd or terminated. (Exhibit C.)

5. The plaintiff submitted a retirement application and his retirement became effective on August 27, 1996. *(Bagenstose v. District of Columbia Office of Employee Appeals*, 888 A.2d 1155, 1157 (D.C. 2005); Exhibit D.)

6. The OEA, OEA Board, Judge Weisberg and the District of Columbia Court of Appeals concluded that the plaintiff's retirement was voluntary. (Exhibits D and E.)

7. OHR found no probable cause as to the plaintiff's claims of discrimination in his 1996 OHR complaint. (Exhibit F.)

8. OHR ultimately found no probable cause as to the plaintiff's claims of retaliation in his 1996 OHR Complaint because the plaintiff could not prove that Ms. Crandall had notice of his prior complaint. (Exhibit A.)

9. Judge Alprin found that the OHR determination with respect to the plaintiff's 1996 OHR complaint was based on substantial evidence and not clearly erroneous as a matter of law. (Exhibit H.)

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Nicole Lynch /s/*
NICOLE LYNCH [471953]
Section Chief
General Litigation Section II

*/s/ Dana K. DeLorenzo /s/*
DANA K. DELORENZO [468306]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
Dana.delorenzo@dc.gov

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Charles M. Bagenstose, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-1245 (RCL) |
| v. | ) | |
| | ) | |
| District of Columbia, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Upon consideration of the District's Motion for Summary Judgment, and opposition thereto and the facts and law considered, it is this ____ day of _____, 2006,

HEREBY ORDERED that the District's Motion is GRANTED; and it is further

ORDERED that summary judgment is granted in the District's favor.

_____
Judge Lamberth
United States District Court

22