# EXHIBIT F

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of Human Rights

Nadine Chandler Wilburn
Interim Director



## LETTER OF DETERMINATION

June 9, 2003

Charles Bagenstose
1019 Butterworth Lane
Upper Marlboro, MD 20774

Reference:   ***Charles M. Bagenstose v. D.C. Public School***
             **Docket No.: 96-263-DC (CN)**
             **EEOC No.: 10C950203**

Dear Mr. Bagenstose:

The Office of Human Rights ("OHR") has completed its investigation of the above captioned complaint. You are referred to as **"COMPLAINANT."** D.C. Public School is referred to as **"RESPONDENT."** Complainant presented the following issues, which were investigated by the OHR.

### ISSUES PRESENTED

1. Whether Complainant was a victim of discrimination on the basis of his age (66) and race (White) when he received a "satisfactory" performance rating in school years 1993-1994 and 1994-1995 while under the supervision of the Principal at School Without Walls.

2. Whether Complainant was a victim of discrimination on the bases of his age (66) and race (White) or retaliation for filing a complaint with the OHR in February 1995, when he was reassigned from School Without Walls to Jefferson Junior High School on September 1, 1995.

3. Whether Complainant was a victim of discrimination on the bases of his age (66), race (White), and retaliation for filing his February 1995 complaint with the OHR when Respondent designated Complainant to be RIFed on June 18, 1996.

135

**JURISDICTION**

Respondent is an independent agency of the District of Columbia that provides education, and support services to DC school children. It is located at 825 North Capitol Street, N.E., Washington, D.C. 20002. Respondent is not exempt for any known reason from the laws of the District of Columbia prohibiting unlawful discrimination. It is therefore subject to the enforcement jurisdiction of the OHR.

**FINDINGS OF FACT**

The OHR's findings of facts were obtained from the following: (1) Complainant's sworn statement; (2) Respondent's Position Statement; (3) Respondent's sworn response to the OHR's Request for Documents; (4) Complainant's Rebuttal; and (5) Respondent's Answers to Interrogatories and requested documents, and the affidavits mentioned below. On the basis of this investigation, the OHR makes the following findings of fact.

Complainant began employment with Respondent on September 1, 1979, at School Without Walls as a teacher. Complainant initially taught chemistry but later switched instructional subjects and taught mathematics. On September 23, 1988, Complainant was assigned to Langdon Instructional Services Center.

On September 28, 1988, Complainant filed a complaint (PERB Case No. 88-U-33) with the Public Employee Relations Board (PERB) alleging that Respondent had engaged in unfair labor practices in violation of D.C. Code Section 1-618.4(a)(1), (3) and (4) of the Comprehensive Merit Personnel Act by threatening to and eventually transferring him from School Without Walls in retaliation for performing duties as a union representative. The Board Order on June 6, 1991, required that: (a) Respondent rescind Complainant's September 1988 transfer and make him whole; (b) Respondent cease and desist from threatening to transfer Complainant in violation of D.C. Code Section 1-618.4(a)(1); and (c) Respondent return Complainant to his former position at School Without Walls at the earliest predictable date, but no later than the start of school year 1991-1992. On July 5, 1991, Respondent filed for Reconsideration, and the Board denied Respondent's Motion for Reconsideration on September 18, 1991. The White individual that Complainant had assisted when performing duties as a union representative was transferred from School Without Walls and subsequently riffed.

On September 1, 1989, Complainant was involuntarily transferred to Spingarn Senior High School.[1] On November 8, 1991, Complainant was transferred back to School Without Walls. See June 6, 1991 PERB Order. In an interview with the OHR's Investigator, the Principal of School Without Walls, stated that she was instrumental in Complainant's return to School Without Walls. She stated that another teacher had recommended him because he worked well with students. The Principal stated that she conversed with Complainant and expressed to him that she would allow him to return to

---

[1] While at Spingarn, Complainant received a rating of "very good" for school years 1989-1990 and 1990-1991.

136

School Without Walls under the condition that he not stir up any trouble within the school.

Complainant filed a charge of discrimination against Respondent on February 23, 1995, alleging that he was subjected to discriminatory terms and conditions of employment. The OHR issued a "No Probable Cause" determination to Complainant by Letter of Determination dated December 31, 1997. Complainant filed a request for reconsideration on June 19, 1998. On May 31, 1999, the OHR affirmed its "No Probable Cause" finding. Complainant filed the present complaint with the OHR on July 25, 1996.

While at School Without Walls, Complainant was under the supervision of the Principal. Complainant received an "outstanding" rating on his performance evaluation in school year 1991-1992, a "very good" rating in school year 1992-1993, a "satisfactory" rating in school year 1993-1994, and a "satisfactory" rating in school year 1994-1995.

On his school year 1993-1994 performance evaluation, Complainant disagreed with the performance rating given him and added the following comments: "... [The Principal] is retaliating against me for legitimate positions, which I took during the year. The issue is honesty." The Principal signed this evaluation on June 30, 1994. On his school year 1994-1995 performance evaluation, the Principal noted that the evaluation was a "forced corrected copy because of [her] error. [Complainant] deserved 'Unsatisfactory'." In an interview with the OHR's Investigator, the Principal stated that Complainant's performance initially began as "excellent" and then progressively worsened. She stated that Complainant received the "satisfactory" ratings because he was not teaching at the level he was supposed to teach. The Principal signed this evaluation on June 6, 1995.[2]

Complainant states that his performance rating in school year 1993-1994 decreased from school year 1992-1993 as an act of retaliation for taking positions contrary to those of the Principal. On April 11, 1994, Complainant wrote a note to the Principal in response to a memorandum he had written addressing the "climate of fear" within School Without Walls, which was due in part to the teachers having been told that not all of them would return the following fall. Complainant listed several White teachers who he deemed as being "under attack." Complainant stated in his note that, to the best of his knowledge and belief, no black teachers were under attack. In an interview with the OHR's Investigator, one teacher noted that racial relations were very tense amongst the faculty at School Without Walls. The teacher also noted that if one spoke out against the Principal's policies and/or procedures, there were repercussions. He cited a personal example when on one occasion he spoke in defense of a department chairperson. The teacher noted that the next day he received a transfer slip to Beal due to Respondent reducing the number of teachers. In a signed statement by another teacher, he noted that the Principal had brought him to teach at School Without Walls and was highly regarded

---

[2] The evaluation submitted to the OHR indicated that it was signed by the Principal on June 6, 1996. However, because the evaluation was for the 1994-1995 school year and all other evaluations submitted for Complainant indicate that they were signed in June of the school year being evaluated, the OHR assumes that the year is a typographical error, and that it was actually signed on June 6, 1995 and not June 6, 1996 for the 1994-1995 school year.

3

137

as a teacher until school year 1993-1994. He noted that during that year, a number of events occurred that might have been connected to his termination at the end of the year. One of the events the teacher described was a falling out with a Black teacher who stated that she would see to it that he was fired and would never work at D.C. Public Schools again.

On April 15, 1994, Complainant received a written reprimand for "discourteous treatment and insubordination" from the Principal regarding his writing and distributing of a "racially inflammatory" letter to teachers. On December 19, 1994, Respondent's EEO Director wrote a memorandum to the Legal Counsel of the Superintendent in response to documents that were gathered during an investigation of an alleged discrimination complaint. Two letters were furnished to Respondent's EEO Director but Respondent submitted only one to the OHR. The one letter submitted was from a Japanese exchange student dated June 17, 1993. The student alleged in his letter that Complainant petted and kissed his hands many times, told him that he loved him, made inquiries as to whether or not he had intercourse, and made insulting statements in relation to black people. The EEO Director noted in his memorandum that, "The student did not prefer to submit his statement until the close of the school year. This student has subsequently graduated."

Complainant's internal EEO Complainant filed with Respondent arouse from a 10-day suspension received from the Principal for allegedly manhandling a student, for which he was subsequently exonerated.

Prior to school year 1995-1996, Complainant was excessed from School Without Walls and assigned to Jefferson Junior High School by the Principal. There is no documentation in the OHR's record to support the exact date that Complainant was assigned to Jefferson. However, it is clear that the decision was made some time in 1995, prior to the beginning of the 1995-1996 school year. Respondent states that Complainant was excessed from School Without Walls and assigned to Jefferson because of the alleged incident with the Japanese exchange student.

The Lead Principal of Jefferson contradicts the reason given by the Principal of School Without Walls for Complainant's transfer, stating that Complainant was excessed from School Without Walls due to "school enrollment numbers and the new student/teacher ratio." Respondent states that when a teacher is excessed, the District is obligated to find a placement for that teacher. Though assigned to Jefferson, Complainant was not permanently assigned to Jefferson. Complainant remained on the School Without Walls payroll, although he was physically teaching at Jefferson. In the Lead Principal of Jefferson's affidavit, she stated that Complainant was excessed from School Without Walls in July 1995 and was waiting for an assignment in another high school. She stated that Jefferson did not have a vacancy for a mathematics teacher or a budget that would provide funds to pay for another teacher. Therefore, Complainant was assigned to the Lead Principal's Office, located at Jefferson, in September 1995. Additionally, the Lead Principal stated that the Director of the Division of Human Resources and the Deputy Superintendent of D.C. Public Schools, made the decision for Complainant to be reassigned and not officially transferred to Jefferson.

138

Complainant states that he was excessed due to his OHR complaint filed in February 1995 and not due to the allegation made by the foreign exchange student two and a half years earlier. In his OHR rebuttal, Complainant states that "the foreign student in question threatened to destroy the Complainant after the Complainant declined to sign a paper which the student wanted him to sign." The student's tactic was to make "false but damaging accusations." When Complainant requested a hearing from the Principal of School Without Walls, the Principal allegedly denied his request on the grounds that "it would cause an international incident."

During the school year at Jefferson, Complainant's performance was not officially rated under the Teacher's Performance Appraisal Process because he was not officially assigned to Jefferson. However, the Lead Principal at Jefferson rated his performance as "satisfactory" on his evaluation for school year 1995-1996.

On June 18, 1996, the Lead Principal of Jefferson began to competitively rate Complainant for the 1996 RIF. There are two Competitive Level Documentation Forms ("CLDF") for Complainant, one handwritten and one typed. On the handwritten form, under the category "Relevant Significant Contributions, Accomplishments or Performance", the Lead Principal at Jefferson wrote, "teacher removed from School Without Walls 9-1-95; Assigned to work at Jefferson JHS without explanation." Complainant received a score of 5 out of a possible 25 points in that category and a score of 10 out of a possible 25 points in the "Relevant Professional Experience as Demonstrated on the Job" category. On the typed form under the category "Relevant Significant Contributions, Accomplishments or Performance," the Lead Principal wrote, "This teacher was assigned to Jefferson from School Without Walls but was not officially transferred, therefore he was not considered in the initial RIF." Complainant received a score of 12 out of a possible 25 points in that category and a score of 4 out of a possible 25 points in the "Relevant Professional Experience as Demonstrated on the Job" category.

Respondent states that when the decision was made regarding the RIF action, only persons permanently assigned to Jefferson were rated using the CLDF. Because Complainant was not permanently assigned to Jefferson, he was not included in that pool. However, the District revised its policy and subsequently all persons, even those currently working in the school and permanently assigned elsewhere were to be ranked using the CLDF. For this reason, Complainant was rated at Jefferson using the CLDF. In her affidavit, the Lead Principal of Jefferson stated that the Assistant Director of Human Resources, directed her to include Complainant in the RIF procedures and was informed of such decision on June 14, 1996.

The Lead Principal of Jefferson completed Complainant's CLDF on June 19, 1996. The Complainant's scores were ranked with the other mathematics teachers in Jefferson. Though ranked with teachers from Jefferson, Complainant was riffed from School Without Walls because he was still on that school's budget. The other teachers were ranked on either the 14th or 17th of June 1996. The Lead Principal of Jefferson states that Complainant was not ranked when the other teachers were ranked because there was a

question as to whether or not he should be ranked based on the fact that he was not officially assigned as a teacher at Jefferson for school year 1996-1997. The directive then came from the Office of Human Resources Management to include all teachers in the process. Respondent proffered that seven teachers were riffed from Jefferson, ages 29, 43, 46, 53, 55, 60, and 65. Of the seven, five are black and one is white. Respondent proffered that six teachers were riffed from School Without Walls (including Complainant), ages 32, 57, 62, 66, and 67. One teacher's age and race is unknown. Out of the six, two are black, two are white, and the race is unknown for two of the teachers. Of a total of 33 mathematics teachers riffed in 1996 from D.C. Public Schools, three fell within the 31-40 age range; three fell within the 41-50 age range; 13 fell within the 51-60 age range; seven fell within the 61-70 age range; one fell within the 71-80 age range; and six individuals' ages were unknown.

Complainant was ranked tenth out of eleven teachers with a score of 56 out of a possible 105. Complainant received his RIF notice on June 18, 1996. However, effective that date, Complainant elected to take a discontinued service retirement in lieu of being separated pursuant to the RIF.[3]

Complainant alleges that the RIF procedures were not followed although an effort was made to make it appear that they were. Complainant specifically alleges that the Lead Principal at Jefferson did not discuss his position with the Local School Restructuring Team (LSRT) because she did not consider him to be a member of her staff. Thus, no prescribed procedures were followed. However, Respondent based its actions upon a mandate dated May 16, 1996, from the Superintendent of Schools' office titled "FY96 Reduction in Force Procedures."

In accordance to Board Rule 1500.4, Respondent defines an encumbered position as, "one which is presently filled by an employee performing an assigned function(s)." An employee encumbers a position where s/he currently works whether or not: (a) an official board order has been prepared making such an assignment or detail; (b) Position Control Number (PCN) is properly assigned; (c) there is no PCN for the position encumbered by that employee; and/or (d) s/he has permanent status in another DCPS position or in the system. In deciding the competitive area targeted for the RIF within the school, Principals, in accordance with their LSRT, will determine the academic program in accordance with the needs of the schools and students.[4] The academic program of mathematics was a competitive area at both School Without Walls and Jefferson as competitive areas.

---

[3] On July 19, 1996, Complainant filed a petition for appeal with the D.C. Office of Employee Appeals (OEA) from Respondent's final decision allegedly separating him from service pursuant to a modified RIF. On October 23, 2001, the Administrative Judge dismissed Complainant's appeal based on the OEA's lack of jurisdiction of the matter.

[4] Board Rule 1501, as amended.

140

**STANDARD OF REVIEW**

In this forum, Complainant must produce credible, probative and substantial evidence from which a reasonable person would conclude that Complainant met the *prima facie* elements of discriminatory or retaliatory behavior, and that a legitimate, nondiscriminatory or nonretaliatory explanation for the behavior does not exist. 4 DCMR § 715.1; 4 DCMR § 499.1.

**LEGAL ANALYSIS**

<u>Complainant's charge that he was a victim of discrimination on the basis of his age (66) and race (White) when he received a "satisfactory" performance rating in school years 1993-1994 and 1994-1995 are dismissed as untimely</u>

Complaints filed pursuant to the DCHRA must be filed within one year of the occurrence or discovery of an unlawful discriminatory practice. D.C. Official Code § 2-1403.4 (2001 Ed.). *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 399 (D.C. 1991). Prior to October 1, 2002, District of Columbia employees were required to file discrimination complaints with an agency Equal Employment Opportunity Counsel (EEO Counselor) within 180 days of a discriminatory incident or the discovery thereof, before filing a claim with the OHR[5]. A District employee may file a claim with the OHR within 15 days of a final interview with an EEO Counselor. Even after the October 1, 2002 amendments, if a District employee wishes to file a claim with the OHR, the employee must first exhaust his administrative remedies with a District EEO Counselor.

In his OHR Complainant Questionnaire, Complainant indicated that he had an interview with an agency EEO officer on July 22, 1995. The OHR's record does not contain a report or other document from an EEO Counselor in connection with Complainant's charge of discrimination. Thus, it appears that Complainant initiated, but did not complete his administrative remedies before filing his charge with the OHR. The OHR will utilize the one-year statute of limitation with regard to this charge because there is no evidence in the OHR's record that the OHR, or the Respondent, notified complainant that he must pursue his charge with an EEO Counselor prior to filing his charge with the OHR.

The Complainant filed his complaint with the OHR on July 25, 1996. Therefore, any acts of discrimination must have occurred between July 25, 1995, and July 25, 1996, in order for the complaint to be timely. Complainant received his satisfactory performance evaluation for the 1993-1994 school year around June 30, 1994. Complainant received his satisfactory performance evaluation for the 1994-1995 school year around June 6, 1995. Receipt of both evaluations occurred outside the applicable statute of limitations. For these reasons, Complainant's claim of discrimination in connection with these evaluations must fail. These allegations are therefore dismissed as time barred.

---

[5] Except in connection with claims of sexual harassment where employees could file a charge directly with the OHR.

7

141

<u>Complainant was not a victim of discrimination on the basis of his age (66) and race (White) when he was reassigned from School Without Walls to Jefferson Junior High School on September 1, 1995.</u>

In a case brought under the D.C. Human Rights Act (DCHRA) of 1977, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Commission on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the employee to prove his *prima facie* case of discrimination by a preponderance of the evidence. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993); *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, (1981). If the employee satisfies his burden, he raises a rebuttable presumption that the employer's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361. After this rebuttable presumption is raised, the employer must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude the that employment action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. "The employer need not persuade the... [trier of fact] that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If a *prima facie* case is made, the Respondent then must articulate a legitimate non-discriminatory reason for the termination. *Texas Office of Community Affairs v. Burdine, 450 U.S. 248, 250 (1981)*. If the employer articulates a legitimate nondiscriminatory reason for the employment action, "the burden shifts back to the employee to prove, again by a preponderance of the evidence, that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 253). Thus, once the employer satisfies its burden of producing a nondiscriminatory reason for its action, the employee must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphasis in original).

Guided by the Supreme Court's analysis in *McDonnell Douglas*, the Complainant establishes a *prima facie* case that he was terminated because of his age by sufficiently demonstrating that:

1. He belongs to a protected class;

2. He was qualified for his position;

142

8

3. He suffered an adverse action; and

4. His age was a "substantial factor" in connection with his adverse action.

*See, Atlantic Richfield v. District of Columbia Office of Human Rights*, 515 A.2d 1095 (D.C. 1986). *McManus v. MCI*, 748 A.2d 949 (D.C. 2000). The Complainant may establish that age was a substantial factor in the decision to terminate him by showing that "similarly situated" persons outside his protected classes were treated more favorably than him. *Atlantic Richfield v. District of Columbia Office of Human Rights, 515 A.2d 1095 (D.C. 1966) ; McManus v. MCI, 748 A.2d 949 (D.C. 2000); Hollins v. Federal National Mortgage, 760 A.2d 563 (D.C. 2000).* An employee would be similarly situated to the Complainant if he or she was similarly situated in all relevant aspects. *Hollins* at 578. Relevant aspects include the employees' respective employment situations and the circumstances generating the allegation of discrimination. *Hollins at 578; Rap, Inc. v. DCCHR, 485 A.2d 1973 (1984).*

Complainant was transferred from School Without Walls to Jefferson effective September 1, 1995, although he was notified sometime prior to that date. The OHR's record does not reveal the exact date that Complainant was advised of his transfer. Complainant satisfies the first element of his *prima facie* case of discrimination as he is a member of protected classes: White and age 66. Complainant also satisfies the second element of his *prima facie* case of discrimination because he was qualified for his position. Complainant, however, cannot satisfy the third element of his *prima facie* case of discrimination because his transfer from School Without Walls to Jefferson effective September 1, 1995 does not rise to the level of an adverse action. An adverse action is one which affects the terms, conditions, or privileges of employment or future employment opportunities, such that a reasonable trier of fact could conclude that the employee suffered objectively tangible harm. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761; *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). There is no evidence in the OHR's record that Complainant's transfer to Jefferson affected a term or condition of employment with Respondent which resulted in tangible harm to the Complainant at the time of his transfer. For this reason, the OHR finds that Complainant does not satisfy his *prima facie* case of discrimination with regard to his claim of race and age discrimination in connection with his transfer to Jefferson in September 1995.

<u>Complainant was not a victim of discrimination on the basis of his age (66) or race when Respondent designated him to be RIFed on June 18, 1996</u>.

As stated above, Complainant satisfies the first two elements of his *prima facie* case of discrimination. In connection with this claim, the OHR finds that complainant also satisfies the third element of his *prima facie* case of discrimination because his designation to be RIFed amounts to an adverse action because it affected a term and condition of his employment and future employment with Respondent. Complainant was slated to be terminated from Respondent's employ. However, Complainant fails to satisfy the fourth element of his *prima facie* case of discrimination in connection with his claims of race and age discrimination because the OHR's record does not contain

9

143

evidence which depicts that similarly situated individuals outside his protected classes were treated differently or more favorably.

In connection with Complainant's claim of race and age discrimination and his the scheduled RIF, Respondent proffered that seven teachers were riffed from Jefferson, ages 29, 43, 46, 53, 55, 60, and 65. Of the seven, five are black and one is white. Respondent also proffered that six teachers were riffed from School Without Walls (including Complainant), ages 32, 57, 62, 66, and 67. One teacher's age and race is unknown. Out of the six, two are black, two are white, and the race is unknown for two of the teachers. Of a total of 33 mathematics teachers riffed in 1996 from D.C. Public Schools, three fell within the 31-40 age range; three fell within the 41-50 age range; 13 fell within the 51-60 age range; seven fell within the 61-70 age range; one fell within the 71-80 age range; and six individuals' ages were unknown. On this record, the OHR cannot find that similarly situated teachers who were non-White and outside Complainant's age range, were treated differently. In fact, the evidence depicts that Respondent selected candidates for the RIF without regard to age or race. For these reasons, the Complainant's claims of race and age discrimination in connection with his RIF fail.

<u>Respondent retaliated against complaint for engaging in protected activity when Respondent transferred him from School Without Walls effective September 1, 1995 to Jefferson</u>

The District of Columbia Court of Appeals enunciated the elements of a *prima facie* case of retaliation in *Young v. Sutherland*, 631 A.2d 354 (D.C. 1993). *See also, Goos v. Nat'l Ass'n of Realtors,* 715 F. Supp. 2 (D.D.C. 1989). Particularly, an employee must demonstrate that: (1) she engaged in a protected activity; (2) the employer took an adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse action. *Id. Sutherland, supra,* 631 A.2d at 368, n. 28. An employee may establish a causal link between her protected activity and the adverse action by showing that her employer was aware of her protected activity and that the adverse action occurred shortly thereafter. *Mitchell v. Baldridge,* 759 F.2d 80, 86 (D.C. Cir.1985).

A protected activity for purposes of the DCHRA, need not take the form of a lawsuit or of a formal complaint to an enforcement agency. To the contrary, the protections of the Act extend to an employee's informal complaints of discrimination to his or her superiors within the organization. *Carter-Obayuwana v. Howard University,* 764 A.2d 779, 790 (D.C. 2001); Civil Rights Act of 1964, 42 U.S.C.A. 2000e-3. Moreover, under the DCHRA, the prohibited adverse action is not limited to retaliatory action affecting the terms and conditions of employment. *Arthur Young,* 631 A.2d at 368, n.31 *(citing Mitchell v. Baldridge,* 245 U.S. App. D.C. 60, 66, 759 F.2d 80, 86 (1985)). Aiding or encouraging any other person in the exercise or enjoyment of any right under the DCHRA is also protected activity. D.C. Code § 2-1402.61 (2001 Ed.).

Under the DCHRA, an adverse action is not limited to an action affecting the terms and conditions of employment. *Arthur Young,* 631 A.2d 368, n.31 *citing Mitchell v.*

144

10

*Baldridge*, 245 U.S. App. D.C. 60, 66, 759 F.2d 80, 86 (1985). However, similar to the adverse action analysis in disparate treatment and whistleblower cases, "courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct." *Taylor v. Fed. Deposit Insurance Corp.*, 328 U.S. App. D.C. 52, 132 F.3d 753, 765 (D.C Cir. 1997). "Mere idiosyncrasies of personal preference are not sufficient to state an injury. *Brown v.* Brody, 339 U.S.App. D.C 233, 199 F.3d 446, 457 (D.C. Cir. 1985). Nor is everything that makes an employee unhappy actionable. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). If that were the case, any action an "irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* A catalog of inter-office disagreements and run-ins with particular co-workers may simply demonstrate office conflict rather than adverse actions. See, *Boesky v. Duffey*, 141 F. Supp. 2d 35, 46 (D.C.D.C. 2001). Although the DCHRA provides broad protection for employees from retaliatory conduct, it is not intended to be an avenue for "judicial review of business decisions," or for Courts to act as "super-personnel departments. See, *Brodetski* at 45. Moreover, employers should not be deterred from asserting or documenting performance difficulties for fear they might be sued. See, *Brodetski* at 47.

An adverse action under the DCHR is established if it is "more likely than not" that retaliation was a "substantial contributing factor" in the alleged retaliatory activity, *Arthur Young* at 370, and the activity had an adverse affect on the employee that was substantial and would not immerse a judicial or quasi judicial decision maker in business and personnel matters appropriately resolved by the employer. See, *Taylor* at 756; *Smart* at 441; *Brodetski* at 46.

If an employee successfully establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate reason for taking the adverse action. If the employer does so, the employee has the ultimate burden of showing through record evidence that the articulated reason is pretext. A finding of pretext, however, does not relieve the employee of the burden of establishing that the true reason was retaliation.

To prevail on a claim of retaliation in this forum, the OHR's record must contain credible, probative and substantial evidence from which a reasonable person could determine that the *prima facie* elements of a retaliation case are present and that a legitimate, non-retaliatory explanation for the alleged retaliatory act or practice does not exist. 4 DCMR § 715.1; 4 DCMR § 499.1.

The OHR finds that Complainant engaged in protected activity on April 11, 1994, when Complainant wrote a note to the Principal of School Without Walls, asserting that several White teachers and no Black teachers believed that they were under attack. The OHR also finds that Complainant engaged in protected activity when he filed his initial complainant with the OHR on February 23, 1995, alleging that he was subjected to discriminatory terms and conditions of employment—OHR case # 96-163, which was not fully resolved by the OHR until May 31, 1999. Within a few months, Complainant was notified that he would be transferred to Jefferson and that the transfer would take effect on September 1, 1995. With such close proximity to his protected activity, the OHR finds that his transfer was causally related to his protected activity and therefore

retaliatory. Complainant therefore satisfies his *prima facie* case of retaliation with regard to his September 1, 1995 transfer to Jefferson.

The OHR also finds that Respondent's non-discriminatory reason for Complainant's transfer—that an exchanged student submitted a letter dated June 17, 1993, complaining of inappropriate sexual contact and discourse—to be unworthy of credence and therefore pretext. The exchange student submitted the letter in June 1993. Complainant was notified about his transfer sometime near the summer of 1995. Any action that Respondent was going to take with regard to the Complainant in connection with these allegations should not have taken two years, given the nature of the allegations. Action did not result until soon after Complainant had engaged in protected activity by filing a claim of discrimination with the OHR in February 1995. For these reasons, the OHR finds that Respondent's non-discriminatory reason is unworthy of credence and that the reason reason for Complainant's transfer was retaliation for engaging in protected activity.

<u>Respondent retaliated against complainant when it designated Complainant to be RIFed on June 18, 1996</u>

As indicated above, Complainant satisfies the first element of his *prima facie* case of retaliation because he engaged in protected activity by filing a complaint before the OHR in February 1995. Complainant was subjected to a retaliatory transfer effective September 1, 1995, because of such protected activity. The OHR also finds that Complainant was a victim of unlawful retaliation under the DCHRA when Respondent designated Complainant to be RIFed on June 18, 1996. Although Complainant had engaged in protected activity in February 1995, and was designated to be RIFed 16 months later, Complainant's RIF was based on the retaliatory transfer. (Moreover, Complainant had a pending claim before the OHR, which was not resolved until 1999. )

Complainant's RIF was causally connected to his retaliatory transfer because the Lead Principal of Jefferson wrote on Complainant's CLDF under the category: "Relevant Significant Contributions, Accomplishments or Performance", "teacher removed from School Without Walls 9-1-95; Assigned to work at Jefferson JHS without explanation." Complainant received a score of 5 out of a possible 25 points in that category and a score of 10 out of a possible 25 points in the "Relevant Professional Experience as Demonstrated on the Job" category. On the typed form under the category "Relevant Significant Contributions, Accomplishments or Performance," the Lead Principal wrote, "This teacher was assigned to Jefferson from School Without Walls but was not officially transferred, therefore he was not considered in the initial RIF." Complainant received a score of 12 out of a possible 25 points in that category and a score of 4 out of a possible 25 points in the "Relevant Professional Experience as Demonstrated on the Job" category.

Complainant alleges that Respondent did not follow appropriate process in the RIF. Separate and apart from the process, because it appears that Complainant's scores were directly related to the fact that he was transferred from School Without Walls without

146

explanation, which the OHR finds was retaliation for engaging in protected activity, the OHR also finds that Respondent's designation of Complainant to be RIFFed was also causally related to his protected activity and therefore unlawful. The OHR finds that Respondent's non-discriminatory reason for designating Complainant to be RIFFed is in essence, not non-discriminatory at all for these very same reasons. Given, the OHR's record, the OHR finds that there is probable cause to believe that Complainant was a victim of retaliation when he was transferred to Jefferson effective September 1, 1995 and when he was designated to be RIFed on June 18, 1996.

**CAUSE DETERMINATION**

For the foregoing reasons:

The OHR finds **PROBABLE CAUSE** to believe that:

1. Complainant was a victim of retaliation for filing his February 1995 complaint with the OHR when Respondent transferred him from School Without Walls in September 1995.

2. Complainant was a victim of retaliation for filing his February 1995 complaint with the OHR when Respondent designated Complainant to be riffed on June 18, 1996.

**IT IS SO ORDERED.**

Respondent shall notify the OHR within fifteen (15) calendar days after receipt of this Letter of Determination as to whether it is prepared to pursue conciliation of this matter. If Respondent fails to respond to this notice or declines the invitation to conciliate, Complainant has the opportunity for a hearing pursuant to 4 DCMR § 110, or the opportunity for a summary determination as provided in 4 DCMR § 109.

**NO CAUSE DETERMINATION**

The OHR finds **NO PROBABLE CAUSE** to believe that:

3. Complainant was a victim of discrimination on the basis of his age (66) and race (White) when he was reassigned from School Without Walls to Jefferson Junior High School on September 1, 1995.

147

**ADMINISTRATIVE DISMISSAL**

The OHR hereby:

> 4. dismisses Complainant's claim that he was a victim discrimination on the basis of his age (66) and race (White) when he received a "satisfactory" performance rating in school years 1993-1994 and 1994-1995 while under the supervisor of the Principal at School Without Walls on the basis of his age (66) and race (White) as time barred.

**IT IS SO ORDERED.**

**RIGHT TO APPLY FOR RECONSIDERATION OF THE NO PROBABLE CAUSE DETERMINATION**

Complainant may apply for reconsideration pursuant to 4 DCMR § 114.3. Such application along with all supporting documentation must be submitted to the Office of Human Rights in writing within fifteen (15) calendar days from receipt of this letter.

The grounds for reconsideration is limited to newly discovered evidence that is competent, relevant, and material, and was not reasonably discoverable prior to the issuance of this determination. The newly discovered evidence must also be evidence that would alter the ultimate outcome in this case. If the request is not based on newly discovered evidence or is not timely filed, it will be subject to dismissal. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS FOR THE APPEAL IN THE ORIGINAL REQUEST FOR RECONSIDERATION.** The OHR may forward a copy of any application for reconsideration, along with all supporting documentation, to the other party for response within ten (10) calendar days after receipt.

If Complainant does not file a request for reconsideration, Complainant has three years from receipt of this Letter of Determination to file a petition for review with the District of Columbia Superior Court.

**RIGHT TO SUBSTANTIAL WEIGHT REVIEW**

As a Complainant you have the right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC). To obtain a Substantial Weight Review, you must, within fifteen (15) calendar days. Send your written request to: State and Local Coordinator, EEOC, 1400 L Street, N.W., Second Floor, Washington, D.C. 20005.

Sincerely,

Nadine Chandler Wilburn
Interim Director

Valerie Jones
EEO Officer
District of Columbia Public School
825 North Capitol Street, N.E.
Washington, D.C. 20001