# EXHIBIT H

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

CHARLES M. BAGENSTOSE,           )
                                 )
            Petitioner,          )
                                 )   Calendar 6
    vs.                          )   Case No.: 05-CA-5506 (MPA)
                                 )   Judge Alprin
DISTRICT OF COLUMBIA             )
OFFICE OF HUMAN RIGHTS,          )
                                 )
            Respondent.          )

**ORDER AFFIRMING DETERMINATION ON COMPLAINANT'S REQUEST
FOR RECONSIDERATION**

This matter is before the court on petitioner Charles M. Bagenstose's petition to review a decision of the D.C. Office of Human Rights ("OHR"). Bagenstose brought the OHR action based on alleged workplace violations of the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 to 2-1411.06 (2001). Based on a review of the briefs, the applicable law, and the entire agency record in this case, the court will affirm the final order in this case, for the reasons stated below.

I.  **BACKGROUND**

   a. **Facts**

This petition comes to the court some ten years after the events leading up to it arose. The facts surround an adversarial relationship between Bagenstose—a white D.C. Public School teacher—and his supervisor, Principal Emily Crandall, who is black. In a

MAILED JUL X 5 2006

DOCKETED JUL 5 2006.



decision letter dated June 9, 2003 ("2003 Letter"), the OHR set forth factual findings in this case that are not disputed. R. at 136–140. The court will adopt these undisputed facts for the purposes of this opinion, and summarize them briefly below.

Bagenstose began his teaching career with the D.C. Public Schools as a chemistry teacher at the School Without Walls ("SWW"), on September 1, 1979. R. at 136. Ten years later, he was transferred to another school, but was then transferred back to SWW on November 8, 1991. *Id.* When he returned, the principal of SWW was Emily Crandall. *Id.* at 131. After returning to SWW, Bagenstose received a rating of "outstanding" on his performance evaluation for the school year 1991–1992; a rating of "very good" for the school year 1992–1993; a "satisfactory" rating for the school year 1993–1994; and a "unsatisfactory" rating for the school year 1994–1995. *Id.* at 137. Bagenstose "states that his performance rating[s] . . . decreased . . . as an act of retaliation for taking positions contrary to those of the Principal." *Id.*

It appears that after Principal Crandall told teachers that many of them would not be returning the following year, Bagenstose wrote her a memo stating that white teachers under her were subjected to a "climate of fear." *Id.* Bagenstose followed up that memo with another letter in which he listed several white teachers he considered to be "under attack." *Id.* One teacher told an OHR investigator that race relations among the faculty at SWW were "very tense." *Id.* That same teacher said that "if one spoke out against the Principal's policies and /or procedures, there were repercussions." *Id.* The 2003 Letter details several examples of such repercussions. *Id.* at 137–38.

2

At some point during 1994, Bagenstose was suspended based on allegations that he had sexually abused a student. *Id.* at 138. Bagenstose was later exonerated, but filed an EEO complaint ("1994 Complaint") with the D.C. Public Schools based on the suspension. *Id.* The details surrounding the filing and resolution of the 1994 Complaint are not apparent from the record, but both parties agree that Bagenstose filed it.

On February 23, 1995, Bagenstose filed another complaint, this time with the OHR ("1995 Complaint"), alleging workplace discrimination.[1] *Id.* at 137. Later that year, before the 1995–1996 school year began, Bagenstose "was excessed from [SWW] and assigned to Jefferson Junior High School by the Principal." *Id.* at 138. D.C. Public Schools claimed that the sexual abuse scandal prompted the transfer. *Id.* Bagenstose, however, claims that Crandall orchestrated the transfer to retaliate against him for his outspokenness.

The following year, on June 18, 1996, the School System notified Bagenstose that he was slated to be "riffed."[2] *Id.* at 140. In lieu of being riffed, Bagenstose chose to take a discontinued service retirement. *Id.*

### b. Procedural Background

On July 25, 1996, Bagenstose filed a second complaint with the OHR ("1996 Complaint"), thus initiating the proceedings currently under review. In the 1996

---

[1] The facts surrounding the litigation of the 1995 Complaint—which the OHR eventually dismissed in 1999, are not important for the purposes of this motion. His act of filing it, however, is relevant to the legal analysis of retaliation.

[2] The term "rif" stands for "reduction in force"—the name of the process the District of Columbia uses to lay off government workers.

Complaint, Bagenstose alleged that Crandall and other D.C. Public School employees had discriminated against him based on his race and age, and that they had retaliated against him for speaking out and filing complaints, by transferring him and then riffing him—*i.e.*, forcing him to retire.

After a lengthy investigation, the OHR issued its findings and conclusions in the 2003 Letter. In the 2003 Letter, the OHR stated that probable cause did not exist to support Bagenstose's discrimination claims, but that probable cause did exist to support his retaliation claims, since the transfer occurred soon after filing the 1995 Complaint. *Id.* at 147. But before issuing a decision finding probable cause and forwarding the complaint to the D.C. Human Rights Commission for a trial-type hearing under D.C. Code § 2-1411.03(6), the OHR instead set the matter down for a limited formal hearing on the single factual issue of "whether anyone at the [SWW] had knowledge of Mr. Bagenstose filing [the 1995 Complaint] during the time he was transferred to the Jefferson School." *Id.* at 423. This inquiry was relevant, because if SWW staff had no knowledge of the 1995 Complaint, then retaliation would have been legally impossible.

The hearing was held on July 13, 2004. After the Hearing Examiner issued her proposed recommendations and findings, the OHR then reversed its probable-cause findings on December 17, 2004. *Id.* at 421. According to OHR, the hearing "established that retaliation did not exist when these [incidents] occurred because the Principal of [SWW] was not aware of the [existence of the 1995 Complaint]." *Id.* Therefore, the OHR's final determination was that there was no probable cause to support any of Bagenstose's allegations.

4

Finally, Bagenstose moved for the OHR to reconsider its decision to reverse the two findings of probable cause. The OHR issued a letter dated June 30, 2005—its final decision in the case—denying Bagenstose's motion to reconsider, and affirming its previous decision to reverse the probable-cause findings. Bagenstose has now appealed this adverse ruling, requesting that the court reverse the OHR's final decision.[3]

## II. DISCUSSION

### a. Jurisdiction and Standard of Review

Preliminarily, the court notes, *sua sponte*, that it is not obvious whether the Superior Court even has jurisdiction to review the OHR's probable-cause determinations. Under most D.C. statutes, the Court of Appeals reviews the actions of the various D.C. government agencies. The one well-known exception to this trend is the decisions of the Office of Employee Appeals ("OEA"), which are appealable to the Superior Court under D.C. Code § 606.03(d) (2001). Correspondingly, our rules of civil procedure feature Agency Rule 1, which is entitled "Superior Court Review of Agency Orders Pursuant to D.C. Code 1981, Title 1, Chapter 6." Title 1, Chapter 6, of course, refers to the D.C. Merit Personnel Act, not the DCHRA.

Turning to the DCRHA, the court notes that judicial review of decisions of the D.C. Human Rights Commission is available in the Court of Appeals under D.C. Code §

---

[3] Bagenstose—who is proceeding *pro se*—has asked the court to "rebuke the OHR for its unseemly behavior, make the Petitioner whole, and award the Petitioner $300,000 plus court costs to compensate him for his pain and suffering throughout this ordeal." Pet.'s Br. at 9. Because the court is sitting as a reviewing court, however, the court construes Bagenstose's request as one for reversal and remand.

5

2-1403.14 (2001). The DCRHA is silent, however, as to where judicial review is available—if at all—for probable cause decisions of the OHR. The Court of Appeals filled this gap in the law in *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 397 (D.C. 1991), holding that OHR probable-cause findings are judicially reviewable, and that the proper reviewing court is the Superior Court. Therefore, Bagenstose properly filed his petition in this court.

Next, the court notes that no statute or court rule provides the appropriate standard of review. Therefore, the court adopts the standard from Agency Rule 1(g), which provides that the court "shall base its decision exclusively on the administrative record and shall not set aside the action of the agency if supported by substantial evidence in the record as a whole and not clearly erroneous as a matter of law."

### b. Analysis

In its original probable-cause findings, the OHR evaluated whether the three elements of retaliation applied to this case: first, whether Bagenstose had engaged in a statutorily protected activity; second, whether the D.C. Public Schools had taken adverse action against him; and third, whether Bagenstose's protected activities prompted the school officials to take the adverse action. *See Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790 (D.C. 2001).

Accordingly, the 2003 Letter states that Bagenstose "engaged in a protected activity" both on April 11, 1994, when he wrote the note to Crandall stating that white teachers were "under attack," and also when he filed the 1995 Complaint. R. at 145. The

6

2003 Letter also found that Bagenstose's transfer from SWW to Jefferson, and his subsequent riffing, both constituted adverse actions. *Id.* at 145–46. Finally, the 2003 Letter determined that the adverse actions were sufficiently close in time to the 1995 Complaint to give rise to probable cause that the protected acts prompted the adverse reaction—*i.e.*, that Crandall and the D.C. Schools had retaliated against Bagenstose for his outspokenness. *Id.* The limited hearing, however, which established that Crandall had no personal knowledge of the 1995 Complaint, served as OHR's justification for reversing its conclusions. Because the court now finds the OHR's final probable-cause decisions to be based on substantial evidence and not clearly erroneous as a matter of law, it will not be set aside.

The OHR, after a lengthy investigation, found that the only protected act that could have prompted Bagenstose's transfer and rif was the filing of the 1995 Complaint. D.C. law provides that the causal connection element of a retaliation claim may be established by showing that an adverse personnel action took place "shortly after" the protected activity. *Hollins v. Fannie Mae*, 760 A.2d 563, 579 (D.C. 2000). Thus, the OHR implies that the 1994 Complaint was too far removed in time from the transfer to raise a suspicion of retaliation. That the transfer did not occur "shortly after" the 1994 Complaint is a legal judgment that the OHR made based on its expertise in administering the DCHRA, and without a bright-line legal rule to the contrary, the court considers the OHR's judgment not to be clearly erroneous as a matter of law.

Next, after establishing the 1995 Complaint as the only colorable basis for retaliation, the OHR then held the hearing, at which Principal Crandall stated that she had

7

no personal knowledge of the 1995 Complaint. Oral testimony of this kind, elicited in a formal hearing on the record, and credited by the Hearing Examiner, is certainly substantial evidence to support the OHR's conclusion that SWW staff did not know about the 1995 Complaint. The role of this court is not to reevaluate the testimony, but merely to verify that the OHR's decision has an evidentiary basis. Therefore, the court will not set aside OHR's final determination—that because no one at SWW knew about Bagenstose's 1995 Complaint, probable cause to believe he was retaliated against did not exist.

Therefore, it is this __5__ day of __July__, 2006, **ORDERED**, that Bagenstose's request to set aside the OHR's decision and remand for further proceedings is **DENIED**.

_____
Geoffrey M. Alprin
Associate Judge
(Signed In Chambers)

Copies to:

Charles M. Bagenstose, *pro se*
1019 Butterworth Lane
Upper Marlboro, Maryland 20774

Frank J. McDougald, Jr., Esq.
Assistant Attorney General
441 4th Street, N.W.
Suite 1060 North
Washington, D.C. 20001
*Attorney for Respondent*

Kenneth Saunders, Director
D.C. Office of Human Rights
441 4th Street, N.W.
Suite 570 North
Washington, D.C. 20001