UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Charles M. Bagenstose,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil No. 06-1245 (RCL) |
| v. | ) | |
| | ) | |
| **District of Columbia, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia ("the District"), by and through undersigned counsel, hereby submits the instant Reply to the Plaintiff's Opposition to its Motion for Summary Judgment.

As a preliminary matter, the District filed its Motion on September 18, 2006. The certificate of service indicates that it was mailed to the plaintiff on this date. The plaintiff's Opposition was apparently filed on October 12, 2006, but was not distributed to the parties via the Court's electronic filing system until October 13, 2006. In any event, the plaintiff's Opposition was filed beyond the 11 days permitted for filing an Opposition. *See* Local Rule 7(b). Local Rule 7(b) also directs this Court to treat the District's Motion as conceded if the plaintiff does not comply with this requirement. *See* Local Rule 7(b). As the plaintiff did not comply with this requirement, or seek leave of Court for more time to file an Opposition, the Court should treat the District's motion as conceded and grant summary judgment in the District's favor on all claims.

If the Court is inclined to accept the plaintiff's untimely Opposition, the District submits that the plaintiff has failed to meet his burden of proof in an Opposition to a Motion for Summary Judgment. F.R.C.P. 56(e) reads:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

F.R.C.P. 56(e). Therefore, it is the plaintiff's burden to challenge—with specificity—the factual allegations in the District's Motion for Summary Judgment ("Motion"). *Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993). Moreover, Local Civil Rule 7(h) authorizes the Court to "assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

Using this benchmark, the Court should conclude that most of the plaintiff's Opposition to the District's Motion for Summary Judgment, including his written responses to the District's Statement of Undisputed Facts are insufficient to meet his burden of proof. (*See* Parts 1 and 2 *infra*.) Most of his Opposition contains tirades against OHR or the various administrative or judicial bodies that have heard various portions of his allegations, rather than a meaningful discussion of the facts and relevant legal authority. Also, the plaintiff failed to address the following arguments made by the District: 1) that his lateral transfer was not actionable under *Brown v. Brody*; 2) that he does not have a viable property interest in an OHR probable cause determination; and 3) that he received the process that he is due. Therefore, these arguments should be treated as conceded. (Local Rule 7(b).) Based on the filings before the Court, summary judgment should be entered in the District's favor as to all counts.

**1. THE PLAINTIFF'S TITLE VII CLAIM IS BARRED.**

In its Motion, the District argued that the plaintiff's Title VII claim with respect to his termination was barred by *res judicata*. The District also argued that his claim regarding his re-assignment from School Without Walls to Jefferson Junior High School was barred because it was a lateral transfer, and therefore, not an adverse action. The plaintiff's Opposition fails to rebut these arguments.

> **a. Plaintiff Conceded That the State Court Already Adjudicated the Pertinent Issues With Respect to his Termination; Therefore, His Title VII Claim is Barred by *Res Judicata*.**

The District argued that, since a Superior Court judge and the District of Columbia Court of Appeals upheld the administrative finding that Mr. Bagenstose's retirement was voluntary, and such a finding precludes the plaintiff from challenging his RIF or termination, he is prohibited as a matter of law from challenging his RIF or termination in the instant case by *res judicata*.[1]

In his response to the District's Statement of Undisputed Facts, the Court should deem the following facts as admitted: On or around June 19, 1996, the plaintiff learned that he would be RIFd or terminated. (Statement of Undisputed Facts at ¶ 4; Opposition at 12 ¶ 4.) The plaintiff submitted a retirement application and his retirement became effective on August 27, 1996. (Statement of Undisputed Facts at ¶ 5; Opposition at 12 ¶ 5.)[2] The OEA, OEA Board,

---

[1] The plaintiff attached to his Opposition Judge Weisberg's Order, which concluded that the decision of the OEA Board (*i.e.*, that the plaintiff's retirement was voluntary) "is supported by substantial evidence and is not clearly erroneous as a matter of law." (Plaintiff's Exhibit No. 4 at p. 3.)
[2] The plaintiff's response does not dispute the fact that he submitted a retirement application or that his retirement became effective on August 27, 1996. In fact, the plaintiff's Attachment No. 3 shows that he submitted retirement paperwork on approximately July 24, 1996. Therefore, this fact should be admitted.

3

Judge Weisberg and the District of Columbia Court of Appeals concluded that the plaintiff's retirement was voluntary. (Statement of Undisputed Facts at ¶ 6; Opposition at 12 ¶ 6.)[3]

In his Opposition, the plaintiff did not dispute that the state courts made such a determination with respect to his retirement. Rather, he criticized the state court determination and, alternatively, challenged the very concept of *res judicata*, claiming that a federal court is not bound by a state court determination. (*See* Opposition at ¶ 2.) In support of his position, the plaintiff cited *American Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir. 1972). However, the *American Mannex Corp.* court was not questioning the validity of *res judicata*. Rather, the court acknowledged that there are sometimes "well-defined policies, statutory or constitutional, [that] may compete with those policies underlying § 1738" and cited tax laws as such an example. *Id.* at 690. The plaintiff's Opposition has not demonstrated that such competing policies are present in the instant case.

Moreover, the plaintiff's citation to such a premise in *American Mannex Corp.* is not consistent with legal precedent from *this* Court. The Honorable Reggie B. Walton concluded in *Wilson v. Riggs Bank N.A.*, 2005 U.S. Dist. LEXIS 6003 at *13, "… pursuant to 28 U.S.C. § 1738, state court judicial proceedings have the same full faith and credit in every United States Court as they have in the courts in the state from which they are taken. Thus, a Superior Court judgment has the same preclusive effect in federal court as it would in the courts of the District of Columbia."

Accordingly, as the plaintiff has not provided any facts or legal authority to counter the District's position that the state court already adjudicated the relevant issues related to his

---

[3] The plaintiff's response essentially concluded that all of the above opinions ignored legal precedent, was "replete with falsehoods," and/or "based on a preposterous accusation." His response, however, does not challenge the fact that the orders upheld the prior rulings that his retirement was voluntary. This fact should be admitted.

retirement (which effectively precludes the plaintiff from challenging his termination), his Title VII claim is barred by *res judicata* and summary judgment should be granted in the District's favor.

>    B. **Plaintiff's Opposition Does not Rebut the District's Argument that his Re-Assignment From School Without Walls to Jefferson Junior High School Was A Lateral Transfer and Therefore Not An Adverse Action for a Title VII Discrimination Claim.**

In its Motion, the District argued that the plaintiff's Title VII claim with respect to his re-assignment from School Without Walls to Jefferson Junior High School was barred because it is a lateral transfer and, therefore, not an adverse action.[4] In his response to the District's Statement of Undisputed Facts, plaintiff conceded that he was re-assigned from School Without Walls to Jefferson Junior High School during the 1995-1996 school year. (Statement of Undisputed Facts at ¶ 2; Plaintiff's Opposition at 11 ¶ 2.) Moreover, the Court should deem the following facts as admitted: The plaintiff did not allege a loss in pay or benefits or any other materially adverse consequences as a result of the re-assignment from the School Without Walls to Jefferson Junior High School. (Statement of Undisputed Facts at ¶ 3; Plaintiff's Opposition at 11 ¶ 3.)[5] Moreover, he does not cite any legal authority that would make *Brown v. Brody* inapplicable or bad law. Accordingly, under the standards for Title VII discrimination, the Court

---

[4] Notably, the plaintiff does not challenge the District's argument that his two-week suspension was not an adverse action. The Court should treat this argument as conceded. (Local Rule 7(b).)

[5] The plaintiff's response was filled with conclusory allegations regarding how "most teachers" would feel as a result of this re-assignment and refers to *Burlington Northern & Santa Fe Ry. v. White*. However, by citing the *Burlington* case and given the different standards for analyzing discrimination claims and retaliation claims under Title VII, it appears that the plaintiff's response addressed his retaliation claim with respect to his reassignment, not his discrimination claim. *See* Part 1(C) *infra*.

    Accordingly, for Title VII discrimination purposes, the plaintiff does not dispute the fact that he did not allege in his Complaint a loss in pay or benefits or any other materially adverse consequences as a result of the re-assignment. Moreover, a review of the Complaint demonstrates that he did not make such an allegation. Accordingly, this fact should be deemed admitted. The District will address the issue of retaliation in Part 1(C) *infra*.

should find that the plaintiff has failed to rebut the District's argument that his re-assignment was a lateral transfer and therefore not actionable.

### C. Plaintiff Cannot Succeed on a Title VII Retaliation Claim Because he Fails to Offer Any Evidence that his Re-Assignment Was Materially Adverse.

Although the plaintiff appears to concede that the re-assignment was a lateral transfer for discrimination purposes, he reframes his position and argues that his re-assignment was retaliatory and therefore actionable. The plaintiff cites *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006) in support of his argument.

In *Burlington*, the plaintiff sued her employer, Burlington, under Title VII claiming that its actions, job reassignment from forklift duty to standard track laborer tasks and suspending her for 37 days without pay, were retaliatory and unlawful. *Id.* at 2410. The jury found that both of these actions were retaliatory. *Id.* at 2416. The case reached the Supreme Court because of the differing circuit interpretations of the anti-retaliation provision of Title VII. The Court's opinion analyzed whether the adverse action in a retaliation claim must be employment- or work-related and how harmful the adverse action must be to be considered retaliation. *Id.* at 2410.

As to the first issue, the *Burlington* Court concluded that "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Id.* at 2409. As to the second issue, the Court articulated a standard for "material adversity."[6] The Court determined that the anti-retaliation "provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee … [meaning] that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* Adopting a standard of "material" adversity, the Supreme Court reasoned, "[a]n employee's

---

[6] This standard was previously used in the D.C. Circuit.

6

decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* By referring to a "reasonable" employee, the Supreme Court set an objective standard for judging material adversity to avoid "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 2415-16.

Therefore, in order for the plaintiff to withstand a motion for summary judgment on a Title VII claim of retaliation based on his reassignment, he has to prove:

> (1) that [he] engaged in statutorily protected activity; (2) that the employer took materially adverse action such that the action 'could well dissuade a reasonable [employee] from making or supporting a charge of discrimination'; and (3) that a causal connection existed between the protected activity and the employer action.

*See Lee v. Winter*, 439 F. Supp. 2d 82 at 85 (2006) (internal citations omitted). Once the Court analyzes the filings with respect to the plaintiff's claim of retaliation through his reassignment, the Court should conclude that the plaintiff cannot satisfy the second and/or third prongs and therefore, summary judgment should be entered in the District's favor.

In this case, there appears to be no dispute that the plaintiff satisfied the first prong, that he engaged in statutorily protected activity, by filing an OHR Complaint. However, the plaintiff failed to satisfy the second prong of this standard because plaintiff has not provided any evidence that the reassignment was a materially adverse action against him that would dissuade a reasonable employee from making or supporting a charge of discrimination.

In *Burlington*, the Court discussed addressed the employer's argument that a reassignment of duties was not retaliatory. The Court concluded that "reassignment of job duties is not automatically actionable … [and the determination of whether it is] materially adverse" depends on the circumstances of the case and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* at 2417

7

(internal citations omitted). In *Burlington*, the Court concluded that there was ample evidence that the reassignment was "materially adverse to a reasonable employee." *See id.* at 2417 ("'track labor duties were 'by all accounts more arduous and dirtier'; that the 'forklift operator position required more qualifications, which is an indication of prestige'; and that 'the forklift operator position was objectively considered a better job and the make employees resented White for occupying it.'"). However, the *Burlington* case is factually distinguishable from the instant case.

The single explanation gleaned from the plaintiff's Opposition about how his re-assignment was materially adverse—given that there was no such information presented in the Complaint—was his statement that a move "from a school in which the students were well behaved and striving to prepare themselves for college to a school in which the students were not well behaved and were far below grade level in the Plaintiff's subject field of mathematics" would be considered "grossly adverse" to "most teachers." (Opposition at ¶ 3.) Notably, the plaintiff failed to attach any affidavits or other supporting documentation (showing a charge in salary or other benefits, increases in travel time, gas or metro fares or how the other teachers viewed the new position) to support his claim that the reassignment was materially adverse.

Unlike in *Burlington*, this single explanation, unsupported by an affidavit or any other document, fails to provide "specific facts showing that there is a genuine issue for trial" on the claim of retaliation. F.R.C.P. 56(e). Moreover, as a matter of law, and in the absence of any other facts, the plaintiff cannot satisfy the second prong on a Title VII retaliation claim. *See Gardner v. D.C.,* 2006 U.S. Dist. LEXIS 59133 *13 (internal citations omitted) ("'purely subjective injuries' such as dissatisfaction with a reassignment … do not rise to the level of an adverse action [for retaliation purposes]"). *But see Lee v. Winter*, 439 F. Supp. 2d 82 at 85

8

(2006) (internal citations omitted) (permitting plaintiff to amend her complaint to include a claim of retaliation because the "alleged retaliatory reassignment" *and* "corresponding threat of reduced compensation" may constitute a materially adverse action).

Even if the Court concluded that the plaintiff met the second prong and proved that the reassignment was materially adverse, the plaintiff has not demonstrated a causal link between the protected activity and the alleged adverse action. As described in the District's Motion and the Statement of Undisputed Facts, OHR reversed its initial probable cause finding with respect to the plaintiff's claim of retaliation.[7] In doing so, OHR determined that "retaliation did not exist when these incidences occurred because the Principal of the School Without Walls [Emily Crandall] was not aware of the February 23, 1995 complaint filed with the OHR." (Exhibit A at 3.)[8] The District's position is strengthened by the fact that this finding was upheld by OHR on plaintiff's Motion for Reconsideration and then in Superior Court. Judge Alprin found that Ms. Crandall's live testimony at the July 2004 limited hearing, which was credited by the Hearing Examiner, is "substantial evidence to support the OHR's conclusion that SWW staff did not know about the 1995 Complaint." (Exhibit H at 8.)[9]

---

[7] In its Statement of Undisputed Facts, the District proffered: OHR found no probable cause as to the plaintiff's claims of discrimination in his 1996 OHR complaint. (Statement of Undisputed Facts at ¶ 7.)
    The plaintiff does not address the fact presented and instead challenges the timeline in which OHR closed his earlier 1995 complaint. (Plaintiff's Opposition at 13 ¶ 7.) This fact should therefore be deemed admitted.
[8] In its Statement of Undisputed Facts, the District proffered: OHR ultimately found no probable cause as to the plaintiff's claims of retaliation in his 1996 OHR Complaint because the plaintiff could not prove that Ms. Crandall had notice of his prior complaint. (Statement of Undisputed Facts at ¶ 8.)
    The plaintiff did not respond to the fact that OHR ultimately found no probable cause but continued to challenge OHR's procedures. (Plaintiff's Opposition at 13 ¶ 8.) This fact should therefore be deemed admitted.
[9] In its Statement of Undisputed Facts, the District proffered: Judge Alprin found that the OHR determination with respect to the plaintiff's 1996 OHR complaint was based on substantial evidence and not clearly erroneous as a matter of law. (Statement of Undisputed Facts at ¶ 9.)
    The plaintiff did not respond to this fact but argued instead that Judge Alprin's Order was filled with "falsehoods and deceptive statements." (Plaintiff's Opposition at 13 ¶ 9.) This fact should therefore be deemed admitted.

In sum, the plaintiff has not presented sufficient supported facts from which this Court can conclude that there exists a genuine factual issue for trial based on the plaintiff's reassignment.  Moreover, as a matter of law, the Court should find that the plaintiff's reassignment was not a materially adverse action that rises to the level of retaliation.  Additionally, the plaintiff has been unable to prove a causal connection between the protected activity and the reassignment.  Therefore, summary judgment should therefore be granted in the District's favor on the plaintiff's entire Title VII claim.

## 2. THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM AGAINST OHR IS BARRED.

In its Motion, the District argued that plaintiff's procedural due process claim against the Office of Human Rights ("OHR") is barred because the District has immunity for quasi-judicial functions, the plaintiff has not asserted a viable property interest in an OHR probable cause determination and he has obtained all of the process that he is due.  For the following reasons, the plaintiff's due process claim must be dismissed.

### a. Plaintiff's Opposition Does Not Rebut the District's Argument That OHR Has Quasi-Judicial Immunity.

The District cited *Crew v. Barry*, 1979 U.S. Dist. LEXIS 9582, for the proposition that OHR has quasi-judicial immunity.  In his Opposition, the plaintiff conceded that that decision "was correct for that particular case." (Opposition at ¶ 4.)  He attempted to distinguish *Crew* from the instant case, as *Crew* was a "private sector matter" and OHR "has a different complaint process for District Government employees." (Opposition at ¶ 4; Attachment No. 2.)  To support his public versus private employee hypothesis, the plaintiff's attached one page of a multiple-page brochure, entitled "Human Rights Enforcement," which is provided by OHR.

The plaintiff's hypothesis regarding public versus private employees is not relevant to the Court's determination of whether OHR has quasi-judicial immunity in this case.[10] Notably, the plaintiff's Opposition failed to provide any legal authority to support his proposition that the *Crew* holding only applies to private sector employees, not District government employees. Moreover, in the absence of any legal authority supporting such a distinction, this Court should, similar to the *Crew* court, find that OHR has quasi-judicial immunity and dismiss all of the plaintiff's claims against OHR.

      **b.** **Plaintiff's Opposition Apparently Concedes that He Has Not Asserted a Viable Property Interest in an OHR Probable Cause Determination and He Has Obtained all of the Process that He Is Due.**

The plaintiff's Opposition only addressed the District's first argument regarding quasi-judicial immunity. The plaintiff's Opposition does not provide any facts or any legal authority addressing the District's other arguments regarding OHR (*i.e.,* that he does not have a viable property interest in an OHR probable cause determination and that he received the process that he is due). Accordingly, the Court should conclude that these arguments are conceded. (Local Rule 7(b).) Accordingly, the Court should grant summary judgment in the District's favor with respect to the plaintiff's due process claims.

WHEREFORE, the District respectfully requests that the Court grant summary judgment in the District's favor.

---

[10] The plaintiff only produced one page of the brochure. The entire brochure is attached as Exhibit I. Consistent with the regulations, the brochure acknowledges some of the procedural differences between D.C. employees and private sector employees:
> If you are a D.C. government employee alleging employment discrimination you should first consult an EEO Counselor in your agency or an at large counselor, in another agency. The EEO Counselor has 21 calendar days in which to seek a solution on an informal basis. You may file formal charges with the office within 15 calendar days of your final interview with an EEO Counselor.

(Human Rights Enforcement brochure at 2.) These differences are also consistent with Title 4 of the D.C. Municipal Regulations.

                    Respectfully submitted,

                    ROBERT J. SPAGNOLETTI
                    Attorney General for the District of Columbia

                    GEORGE C. VALENTINE
                    Deputy Attorney General
                    Civil Litigation Division

                    */s/ Nicole Lynch /s/*
                    NICOLE LYNCH [471953]
                    Section Chief
                    General Litigation Section II

                    */s/ Dana K. DeLorenzo /s/*
                    DANA K. DELORENZO [468306]
                    Assistant Attorney General
                    441 4th Street, N.W.
                    6th Floor South
                    Washington, D.C. 20001
                    (202) 724-6515
                    (202) 727-3625 (fax)
                    Dana.delorenzo@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2006, a copy of the foregoing Reply was mailed postage prepaid to:

Charles M. Bagenstose
1019 Butterworth Lane
Upper Marlboro, MD 20774

                    */s/ Dana K. DeLorenzo /s/*
                    Dana K. DeLorenzo
                    Assistant Attorney General