UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Leave to file GRANTED

/s/ John D. Bates 11/8/06
John D. Bates
United States District Judge

CHARLES M. BAGENSTOSE,
    Plaintiff

v.

GOVERNMENT OF THE DISTRICT
OF COLUMBIA et al.,
    Defendants

Civil Action No. 1:06CV01245(JDB)

PLAINTIFF'S RESPONSE TO DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO
PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

The Certificate of Service certifies that a copy of the Defendant's Reply was mailed on October 27, 2006. The postage date on the envelop, however, is October 30, 2006.

The Defendant's Reply is precisely what the <u>Burlington Northern & Santa Fe Railway Co. v. White</u> (No. 05-259) case is all about. The Reply is extremely intimidating to the point that a reasonable mind could be dissuaded from filing or supporting a discrimination complaint. The District of Columbia Public Schools (DCPS) asserts that it does not discriminate on the basis of race, color, national origin, sex, age, or disability and that discrimination will not be tolerated. Yet, after the Plaintiff in the instant case filed a discrimination complaint, he was subjected to countless acts of retaliation including the present Reply.

What makes the Defendant's Reply so intimidating is that it contains many specious statements, which are either false or deceptive. If the Court accepts them as true, the Plaintiff can lose his case on false pretenses. This is why the Plaintiff wishes to have his case heard by a jury.

The Assistant Attorney General (AAG) seems to believe that if a falsehood

1

RECEIVED
NOV - 6 2006
SUPERIOR COURT

RECEIVED
NOV 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

is repeated often enough and loud enough, it will eventually be perceived as true. For example, the AAG discusses the doctrine res judicata ad nauseam, insisting that the doctrine precludes the Plaintiff's case from being heard in a federal court. But the Plaintiff established in his Opposition that exceptions can be made, if circumstances warrant them. The doctrine was established to avoid unnecessary duplication of effort, but not to afford protection to the state courts for egregious acts or for thwarting federal laws, such as Title VII. The instant case cries out for an exception to be made. The U. S. Constitution does not require that federal courts accord full faith and credit to state-court judgments.

Likewise, the AAG insists that the Plaintiff's reassignment to Jefferson Junior High School was a lateral transfer. She faults the Plaintiff for not filing affidavits showing that other teachers would consider the reassignment materially adverse. However, in the Burlington case a jury determined whether White's reassignment was adverse. Certainly, the Plaintiff in the instant case would have thought twice before filing a complaint had he realized that in response he would be reassigned to a much less satisfying and much more emotionally stressful position. Employer actions that are likely to deter discrimination victims from complaining to the EEOC and the courts are prohibited. According to Burlington a lateral move without loss of pay or status can nevertheless be considered illegal if the change in working conditions is adverse. The Plaintiff would like a jury to consider this issue.

Similarly, the AAG insists that the Plaintiff received all the due process to which he is entitled. This, after the Plaintiff explained how the OHR and the D. C. courts played all kinds of mean tricks on him. She

mentions in a positive way, for example, Judge Geoffrey M. Alprin, who without any basis at all in fact accused the Plaintiff of being suspended for sexually abusing a student. That is due process? Please.

The AAG characterized the Plaintiff's descriptions about what occurred during the adjudication of his case in the various administrative and judicial bodies as tirades. (See Reply, p. 2) This mischaracterization is typical of what the adjudicative bodies do in the District of Columbia, when they seek to protect the D. C. Government from financial liability for its wrongdoings.

The AAG still insists on page 10 of her Reply that the OHR has quasi-judicial immunity. But the Plaintiff sent a Freedom of Information Act request to the OHR (See Exhibit No. 1) to determine whether or not the OHR is indeed quasi-judicial when it comes to D. C. Government employee complainants. Exhibit No. 2 is the OHR's response. Paragraph 705.4(b) shows that in the private sector the person alleged to have committed the unlawful discriminatory practice is held to be the Respondent. Paragraph 711.1 shows that the complaint is to be served on the Respondent.

Paragraph 106.3, on the other hand, shows that in the D. C. Government Employee sector a copy of the complaint should be provided to the Agency. Thus, when it comes to D. C. Government employees, the perpetrator of a discriminatory act is not directly notified, thus allowing the perpetrator to claim no knowledge of the complaint. There is no mention at all of a "limited" hearing.

Exhibit No. 3 shows that a private sector Complainant is supposed to receive a trial-type hearing. Again there is no mention of a "limited" hearing, which the OHR employs to prevent a D. C. Government employee from

presenting his case. The combination of the tactics of not notifying the perpetrator of a discriminatory act directly that a complaint has been filed, of then demanding that the Complainant prove that the perpetrator knew about the complaint, and of holding a "limited" hearing on that issue alone makes it impossible for a D. C. Government employee to win a case. When the OHR stacks the deck in this fashion, it is no longer a quasi-judicial body. The Plaintiff desires a jury to consider this issue.

On page 1 the AAG states that Local Rule 7(b) directs the Court to treat the District's Motion for Summary Judgment as conceded if the opposing party doesn't meet the 11-day prescribed time for submitting an opposition pleading. That is a falsehood. Rule 7(b) says that the Court _may_ treat the motion as conceded, not that it has to.

On page 3 the Reply states that the Plaintiff submitted a retirement application and that his retirement became effective on August 27, 1996. It does not explain how the Plaintiff was tricked into retiring, when the Personnel Office contacted him by telephone and knowingly, deliberately, and maliciously gave him false information. It also doesn't mention that the Personnel Office knowingly, deliberately, and maliciously changed the original July 19, 1996, date of termination to August 27, 1996, to make it appear that the Plaintiff voluntarily retired to avoid being RIFed.

On page 4 the Reply states that the state courts already adjudicated the relevant issues in the Plaintiff's case. It does not mention that Superior Court Judge Frederick H. Weisberg knowingly, deliberately, and maliciously falsely accused with no basis in fact the Plaintiff of retiring voluntarily and arranging to have his retirement postponed so as to increase his benefits. Nor does it mention that Judge Weisberg as well as the

4

D. C. Court of Appeals ignored all of the case law which says that employees should not be given misinformation by their employers when they are terminated and must be told that if they retire they will forfeit their right to appeal their terminations. The D. C. Court of Appeals was fully aware that the Personnel Office deliberately misled the Plaintiff when it tricked him into retiring.

As for Judge Alprin, he was so reckless and irresponsible with the facts that his Order should carry no credibility whatsoever. No judge should have the right to destroy a person's reputation, when there is no justification for that in fact.

On page 2 the Reply asserts that the Plaintiff failed to address the arguments made by the Defendant. The Plaintiff believes that he did. A jury should decide that issue.

On page 4 the Reply says that the Plaintiff didn't cite a competing policy to justify an exception to res judicata. Actually, the Plaintiff cited Title VII.

On page 7 the Reply states that the Plaintiff did not prove that his transfer was an act of retaliation. Actually, the OHR determined that, although it attributed the retaliation to the wrong complaint as a means of denying the Plaintiff his victory.

On page 8 the AAG argues that dissatisfaction with a reassignment does not rise to the level of an adverse action for retaliation purposes. Apparently the AAG has never visited a dysfunctional school.

On page 9 the Reply asserts that the Plaintiff did not respond to Judge Alprin's claim that the OHR's decision was based on substantial evidence. Actually, the Plaintiff responded to that claim in great detail on pages

5

9-11 of his Opposition, especially Item 5 at the top of page 11.

Similarly, on page 9 the Reply says that the Plaintiff did not address the fact that the OHR found no probable cause as to the Plaintiff's claims of discrimination in his 1996 OHR complaint. Actually, the Plaintiff pointed out that that occurred, because he was not permitted to trace all of the retaliatory acts which he experienced, including his transfer and RIF, back to the incident which started it all, because the OHR closed his 1995 complaint prematurely.

The Reply is a classic example of how the adjudicative process operates in the District of Columbia. All of the characteristics of the process are there: the omission of pertinent facts, the distortion of facts that are discussed, the falsehoods, and the misleading statements that confuse and confound the issues.

The Plaintiff lives in constant fear that this Court will follow suit and deny him justice. This is the main reason that he wants a jury trial.

The Plaintiff respectfully requests that the Court deny the Defendant's request for summary judgment in its favor.

Respectfully submitted,

Charles M. Bagenstose
Pro se
1019 Butterworth Lane
Upper Marlboro, Maryland 20774
301-336-0622

6

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Response to Defendant District of Columbia's Reply to Plaintiff's Opposition to Its Motion for Summary Judgment was hand-delivered to the following person on the 6th day of November, 2006:

Dana K. DeLorenzo
Assistant Attorney General
Office of the Attorney General
441  4th Street, N. W., 6th Floor South
Washington, D. C. 20001

_____
Charles M. Bagenstose