**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CHARLES M. BAGENSTOSE,**

**Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al.,**

**Defendants.**

---

**Civil Action No. 06-1245 (JDB)**

**MEMORANDUM OPINION**

Plaintiff Charles M. Bagenstose ("plaintiff") is a former teacher who has spent much of the last decade challenging before District of Columbia administrative bodies and courts the allegedly discriminatory and retaliatory actions that preceded the end of his teaching career in the District of Columbia Public School System.  After those challenges proved unsuccessful, Bagenstose filed a two-count pro se complaint in this court against the District of Columbia ("the District") and the U.S. Equal Employment Opportunity Commission ("EEOC").  Plaintiff's complaint, liberally construed, alleges that the District discriminated against him and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and that, in handling his allegations of discrimination and retaliation, the District and the EEOC violated his right to due process of law afforded by the Fifth Amendment of the U.S. Constitution.  Presently before the Court are the EEOC's motion to dismiss, the District's motion for summary judgment, and plaintiff's motion to schedule a status conference.  For the reasons set forth below, the Court will grant each defendant's motion and deny plaintiff's motion as moot.

1

## BACKGROUND

The facts relevant to plaintiff's claims begin with his original allegations of discrimination and retaliation dating from the mid-1990s, and include the lengthy proceedings that ensued before District of Columbia administrative agencies and courts. These facts are drawn from plaintiff's pro se complaint, from the exhibits attached to the District's memorandum in support of its motion for summary judgment ("D.C. Mem.")[1], and from the exhibits accompanying plaintiff's oppositions to the dispositive motions filed by the District and the EEOC.

Bagenstose, a white male, was a mathematics teacher employed by the District of Columbia Public Schools ("DCPS") from 1979 until 1996. Compl. at 6 ¶ 12. In the early 1990s, plaintiff was working at the School Without Walls ("SWW"). SWW's principal at the time was Emily Crandall, an African-American female. Id. at 2 ¶ 1. At the start of the 1994-95 school year, there was already discord between plaintiff and Crandall, due in part to declining performance ratings that plaintiff believed were unjustified. D.C. Mem., Exh. F at 3. Plaintiff encountered additional difficulties during that same time period when he was accused of abusing a student and was initially suspended for two weeks without pay. Id. at 1-2 ¶ 1. He was later exonerated and recovered his lost pay. Id. at 2 ¶1. Plaintiff alleges that, in the wake of that

---

[1] The District has attached eight exhibits to its supporting memorandum. In chronological order, they are: Exh. C (7/19/96 Notice of Reduction-In-Force); Exh. B (Plaintiff's 7/25/1996 Discrimination Complaint to the D.C. Office of Human Rights); Exh. E (D.C. Office of Employee Appeals, 10/23/2001 Administrative Judge Decision); Exh. F (D.C. Office of Human Rights, 6/9/03 Letter of Determination); Exh. A (D.C. Office of Human Rights, 6/30/2005 Determination on Complainant's Request for Reconsideration); Exh. G (7/18/2005 Petition for Judicial Review); Exh. D (Bagenstose v. D.C. Office of Employee Appeals, 888 A.2d 1155 (D.C. 2005)); Exh. H (7/6/2006 D.C. Superior Court Decision).

incident, Crandall suggested to the parents of the student that they file a written request for a formal investigation into the matter.  Id.  She did not, however, suggest the same course of action to the parents of another student who had been similarly treated by an African-American teacher. This allegedly disparate treatment prompted plaintiff to file a complaint with the DCPS Equal Employment Opportunity ("EEO") office in September of 1994, the first of three administrative complaints at issue here.  Id. at 1 ¶ 1; D.C. Mem., Exh. F at 4.

Plaintiff's troubles did not end there.  His internal complaint, he maintains, triggered a series of discriminatory and retaliatory acts against him, beginning with harassment from students, parents, and other teachers at the SWW.  Compl. at 2 ¶ 2.  Plaintiff then filed a second complaint in February of 1995, this time with the D.C. Office of Human Rights ("OHR").  After conducting an initial investigation, the OHR found no probable cause to believe that plaintiff had been the victim of either retaliation or discrimination on the basis of age or race.  The OHR's decision is not in the record, but plaintiff suggests in his Complaint that OHR based its finding of no racially disparate treatment on the fact that one student's parents complained to higher-ups, while the other student's parents did not.  Id. at 8 ¶ 4.  Plaintiff sought reconsideration of the administrative ruling, which the OHR denied in May of 1999.  D.C. Mem., Exh. F. at 3.

As it turned out, the 1994-1995 school year was to be plaintiff's last at the SWW.  On September 1, 1995, plaintiff was unofficially transferred to teach at another DCPS school, the Jefferson Junior High School.  Compl. at 2 ¶ 2.  DCPS provided conflicting reasons for the transfer.  Whereas Crandall claimed that plaintiff had been reassigned to Jefferson after he was accused of harassing an exchange student, Jefferson's principal, Vera White, reported to the OHR that the reassignment had taken place for administrative reasons.  D.C. Mem., Exh. F. at 4.  Then,

on June 19, 1996, plaintiff received a Reduction-in-Force ("RIF") notification informing him that he would be discharged effective July 19, 1996.  Compl. at 2 ¶ 2; D.C. Mem., Exh. C at 1-2.  The notification letter informed plaintiff of his right to appeal any failure by the DCPS to follow certain procedures for the proposed RIF and stated that plaintiff could retire if he was eligible. Id.; see also Bagenstose v. D.C. Office of Employee Appeals, 888 A.2d 1155, 1157 (D.C. 2005). At the same time, the letter did not inform plaintiff that he would be unable to challenge the proposed discharge if he chose to retire.  Plaintiff further claims that, soon after receiving the discharge notice, he received a telephone call from the DCPS personnel office telling him that if he did not complete the relevant retirement application, he might not receive the maximum pension available to him.  Id. at 1158.  On July 24, 1996, plaintiff applied for retirement to take effect on June 30, 1996.  Id.  He signed the required form, but scrawled at the bottom: "RETIRING UNDER PROTEST.  I really do not wish to retire but am forced to do so, because I have been RIF'ed."  Pl.'s D.C. Opp'n, Attach. 3.

What plaintiff calls his "forced" retirement led to two subsequent administrative complaints.  Plaintiff filed the first one, which challenged his selection for termination, with the D.C. Office of Employee Appeals ("OEA") on July 19, 1996.  See Bagenstose, 888 A.2d at 1157. A hearing on the complaint was held before an OEA administrative law judge ("ALJ") in July of 2001.  Plaintiff testified, as did three other teachers affected by the RIF and Principal White of the Jefferson School.  D.C. Mem., Exh. E at 2.  In October of 2001, the ALJ issued a written decision finding that plaintiff had failed to meet his burden of showing that his retirement was involuntary.  Id. at 5.  And because plaintiff had retired voluntarily, he had never been discharged as part of the RIF and could not contest the legality thereof.  Plaintiff then challenged the OEA's

determination in the District of Columbia Superior Court. After that court found that the OEA's administrative decision was based on substantial evidence and was not clearly erroneous, Pl.'s D.C. Opp'n, Attach. 4, plaintiff appealed to the District's highest court. Bagenstose, 888 A.2d at 1155. The D.C. Court of Appeals affirmed the administrative ruling in a published decision. Acknowledging that the RIF notice and the subsequent "phone message may have presented a difficult situation" for plaintiff, the court found no evidence that plaintiff had been misled or that his decision to retire had been made under such duress that it was involuntary. Id. at 1158.

Plaintiff filed his second complaint with the OHR on July 25, 1996. See D.C. Mem., Exh. B. As is relevant here, plaintiff claimed that DCPS discriminated and retaliated against him first by transferring him to the Jefferson School and subsequently by slating him for dismissal as part of the RIF. Id. The OHR conducted an investigation, during which it sought sworn statements from plaintiff and DCPS, requested documents from DCPS, required DCPS to respond to interrogatories, and received affidavits from certain individuals. D.C. Mem., Exh. F at 2. These submissions formed the basis for the OHR's findings of fact. In June of 2003, the OHR issued a "Letter of Determination" in which it found no probable cause to support plaintiff's discrimination claims, but that probable cause did exist to support his retaliation claims. Id. at 13. Specifically, the OHR found that plaintiff had engaged in protected activities when he wrote a letter to Principal Crandall in April of 1994 and, most critically, when he filed a complaint with the OHR in February of 1995. Id. at 11. No mention was made of plaintiff's September 1994 EEO complaint serving as the basis for either the retaliatory transfer or the RIF decision.

Plaintiff's retaliation claims did not, however, proceed directly to a trial-type proceeding before the D.C. Human Rights Commission. Instead, in early 2004, the Director of the OHR

decided that further investigation was warranted on the question of whether anyone at the SWW knew about plaintiff's 1995 OHR complaint and whether that complaint could have prompted the allegedly retaliatory actions.  D.C. Mem., Exh. A. at 2.  The OHR thus scheduled a limited formal hearing dedicated to that issue on July 13, 2004.  A few months after the hearing, the OHR reversed its probable-cause determination regarding the retaliation claim, concluding that Principal Crandall had no knowledge of the February 1995 complaint and that, without such knowledge, there could be no causal connection between plaintiff's protected activity and the adverse actions he suffered.  Id. at 3.  On June 30, 2005, the OHR denied plaintiff's request for reconsideration.  Id. at 4.  Plaintiff then sought judicial review in D.C. Superior Court.  D.C. Mem., Exh. H at 1.  On July 5, 2006, Judge Alprin of the Superior Court affirmed the OHR's ruling.  Id. at 8.  Especially significant in his view was the fact that an impartial hearing examiner had seen first hand Principal Crandall testify on the record that she had no knowledge of plaintiff's February 1995 complaint.  Id. at 7-8.  The judge also addressed plaintiff's repeated assertion that it was his September 1994 EEO complaint -- not the 1995 OHR complaint -- that prompted retaliatory actions by Crandall.  This earlier complaint, the judge explained, "was too far removed in time from the transfer to raise a suspicion of retaliation," a finding that the judge believed to be implicit in the OHR's various decisions.  Id. at 7.

While these proceedings were ongoing, plaintiff also sought relief from the Washington, D.C. field office of the EEOC.  Plaintiff asked the EEOC to review the OHR's June 30, 2005 denial of his request for reconsideration.  Compl. at 4 ¶ 6.  David Gonzalez ("Gonzalez"), the EEOC's State and Local Coordinator in that field office, allegedly responded to plaintiff's petition by stating that the EEOC "would not investigate any charges against the OHR, because to do so

would impair his [Gonzalez's] working relationship with the OHR." Id. In April of 2006, Gonzalez sent plaintiff a letter announcing that the EEOC was administratively closing his case and was issuing him a right-to-sue letter. Pl.'s EEOC Opp'n, Exh. 1. The right-to-sue letter informed plaintiff that he had ninety days from receipt to file a suit against the D.C. government in federal court. Id. Undeterred, plaintiff questioned the propriety of Gonzalez's actions with his supervisors. Dana R. Hutter, Director of the EEOC's Washingto, D.C. field office, responded to plaintiff with a letter in June of 2006 reiterating the EEOC's position that the OHR had "appropriately handled" the charges lodged and that plaintiff's only recourse at that point was to file suit in federal court. Pl.'s EEOC Opp'n, Exh. 2.

Heeding that advice, plaintiff filed the present Complaint in July of 2006.[2] Count I alleges that the OHR committed a series of "retaliatory acts to obstruct the Plaintiff's right to due process under the civil rights laws." Compl. at 7. In Count II, plaintiff alleges that the EEOC "aids and abets the OHR's efforts to thwart the civil rights laws" in a number of ways. Id. at 10. Plaintiff seeks an award of back pay, lost benefits, and court costs, as well as punitive and compensatory damages for his pain and suffering. Compl. at 13. He also asks to be reinstated as a teacher at the SWW and for an injunction that orders the OHR and the OEA to refrain from committing "the egregious acts discussed in []his complaint," and that requires the "EEOC to enforce the civil rights laws irrespective of who violates them." Id.

---

[2] An earlier lawsuit filed by plaintiff against the DCPS had been dismissed without prejudice while the parallel proceedings in the District of Columbia court system concluded. Bagenstose v. District of Columbia Public Sch., Civ. A. No. 00-0228, Dkt. #54 (D.D.C. Jan. 12, 2004). Plaintiff's present complaint was therefore reassigned to this Court as a related case pursuant to Local Civil Rule 40.5(a)(4).

## STANDARDS OF REVIEW

The EEOC moves to dismiss plaintiff's claim against it for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). The Court need not, however, accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d

8

ed. 1987)).  Additionally, a court may consider material other than the allegations of the

complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the

factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA,

402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d

621, 624-25 n.3 (D.C. Cir. 1997).

    To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "'a short

and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl.

Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355

U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per

curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish

"more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

action."  Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan, 478 U.S. at 286.  Instead, the

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."  Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).  Hence, while "a well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

impossible, and 'that a recovery is very remote and unlikely,'"  id. (citation omitted), the

"threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough

heft to 'sho[w]' that the pleader is entitled to relief,'"  id. at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

    With respect to the District's dispositive motion, summary judgment is appropriate when

9

the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

### A. EEOC's Motion to Dismiss

Although far from clear, plaintiff's claim against the EEOC appears to rest on the theory

that the EEOC colluded with the OHR to "thwart the civil rights laws." Compl. at 10.    The

EEOC has moved to dismiss this claim either for lack of subject-matter jurisdiction or for failure

to state a claim upon which relief can be granted, arguing that plaintiff's claim fails as a matter of

law whether it is construed as an attack on the manner in which the EEOC investigated plaintiff's

allegations against DCPS, or as a challenge to the EEOC's decision not to pursue charges of

discrimination and retaliation against the OHR itself.  Plaintiff has a remedy, the agency points

out, in the form of a suit against his employer, and both settled circuit precedent and established

principles of sovereign immunity preclude his claim against the EEOC.

    The EEOC is correct on both fronts.  Taking the immunity issue first (because it goes to

subject-matter jurisdiction), the law is clear that neither the United States nor federal

administrative agencies can be sued absent an unequivocal waiver of their sovereign immunity.

FDIC v. Meyer, 510 U.S. 471, 475 (1994).  Waivers of sovereign immunity, moreover, are to be

strictly construed in favor of the government.  Lane v. Pena, 518 U.S. 187, 192 (1996).  Although

Congress has waived the federal government's immunity from suit in various provisions of Title

VII, it has done so only under specific circumstances, most prominently where the government is

the employer.  See 42 U.S.C. § 2000e-16(c).  The EEOC may likewise be sued where it acts as an

employer.  Id.; Darbeau v. Library of Congress, 453 F. Supp. 2d 168, 170 (D.D.C. 2006).  But

plaintiff was not an employee of the EEOC, and he has identified no other provision in Title VII

that expressly waives the agency's immunity from a suit challenging the manner in which it

investigates or processes claims of employment discrimination.  His claim is therefore properly

dismissed for lack of subject-matter jurisdiction.  See id.[3]

Even if plaintiff could overcome the immunity hurdle, his claim would still have to be dismissed as a matter of law.  As the EEOC points out, a consistent line of precedent both inside and outside of this circuit confirms that Title VII provides no cause of action for challenges to the procedures used by the EEOC to investigate and process discrimination complaints.  See Wright v. Dominguez, No. 04-5055, 2004 WL 1636961, at *1 (D.C. Cir. July 21, 2004) (so holding and collecting cases); Smith v. Casellas, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam); see also Darbeau, 453 F. Supp. 2d at 70.  The reasoning in these cases is straightforward: because Congress provided alleged victims of employment discrimination a right to sue in federal court regardless of whether the EEOC rejects their claims, those parties suffer no harm if the EEOC conducts an imperfect investigation or inquiry, and consequently have no need to sue the agency for negligence or malfeasance in the processing of claims.  See Smith, 119 F.3d at 34; Ward v. EEOC, 719 F.2d 311, 313 (9th Cir. 1983).  Hence, even if plaintiff is correct that the EEOC declined to pursue his claims out of nothing more than fear of straining its working relationship with the OHR, see Compl. at 11 ¶ 1, the law provides him no cause of action against the EEOC. Title VII does, however, allow him to sue his employer directly.  Plaintiff can thus overcome the EEOC's alleged attempt to "thwart the civil rights laws" simply by suing the District in federal court.  It is to these federal claims against the District that the Court now turns.

## B.  District of Columbia's Motion for Summary Judgment

The precise nature of plaintiff's claims against the District is at times difficult to discern,

---

[3] Plaintiff has neither asserted nor pursued any other plausible basis for subject-matter jurisdiction over claims against a federal agency.

although the Court has endeavored to give his <u>pro se</u> filings the generous construction to which they are entitled.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam).  Understandably upset by what he views as unlawful conduct on the part of the DCPS, the OEA, and the OHR, plaintiff fills much of his pleadings with invective accusing those entities of conspiring to deny District employees remedies for civil rights violations and of "protect[ing]" the D.C. government "through the use of deceptive and deceitful acts."  Pl.'s D.C. Opp'n at ¶¶ 1(c), 4.  The Court construes these aspects of the Complaint as alleging a violation of plaintiff's Fifth Amendment right to due process of law.  In addition, the Court will follow the District's lead and will construe the remaining portion of the Complaint as challenging under Title VII the legality of plaintiff's 1995 transfer and what he views as his forced retirement in 1996.

    *1. Due Process*[4]

    Plaintiff's due process claim centers on various acts or omissions that the District's administrative agencies allegedly committed while processing and adjudicating his employment-discrimination case.  Specifically, plaintiff maintains that the OHR and the OEA relied on false affidavits and disregarded relevant evidence and testimony in making their administrative decisions, failed to respond to plaintiff's inquiries regarding their investigative procedures, employed deceptive maneuvers to prevent plaintiff from filing discrimination and retaliation complaints, and unfairly treated plaintiff at each step of the administrative review process.  <u>See</u>

---

    [4] The District argues as an initial matter that plaintiff's claims against the OHR and OEA are barred because those entities acted in a quasi-judicial capacity and are thus immune from suit. In support of this contention, the District relies principally on an almost thirty-year-old unpublished opinion from this district, <u>Crews v. Barry</u>, No. 79-1383, 1979 WL 33, at *1 (D.D.C. Sept. 25, 1979).  Because the Court rejects plaintiff's due-process claim on the merits, it will not reach the District's argument based on quasi-judicial immunity.

Compl. at 7-10; Pl.'s Opp'n at 5-6 ¶ 6.  The District counters that plaintiff has no protected property interest and that, even if he did, he received all of the process that was due.

The Fifth Amendment's Due Process Clause prohibits the federal government, as well as the District of Columbia, from depriving persons of "property, without due process of law."  U.S. Const. amend. V.  A threshold question in the due process inquiry is whether the party asserting the violation has a protected property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Washington Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 36 (D.C. Cir. 1997).  Property interests are created by "existing rules or understandings that stem from an independent source such as state law." Loudermill, 470 U.S. at 538 (citations and quotation marks omitted).  State statutes or regulations may create a property interest where they "'secure certain benefits and . . . support claims of entitlement to those benefits.'" Barry, 107 F.3d at 36 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Moreover, "a procedural due process claim requires the plaintiff to identify the process that is due." Doe by Fein v. District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996) (per curiam).

Here, the District contends that plaintiff has no protected property interest in having the OHR make a probable-cause determination.  But the right plaintiff seeks to vindicate is not as specific as the District casts it.  Rather, plaintiff appears to be challenging more generally the fairness of the proceedings held to adjudicate his allegation that the DCPS retaliated and discriminated against him.  As others courts in this circuit have held, the District of Columbia has "put in place [procedures] . . . to address claims of employment discrimination," thereby conferring on plaintiffs "a property interest in having [their] grievance[s] heard and redressed." See Long v. District of Columbia, 3 F. Supp. 2d 1477, 1479 (D.D.C. 1998), aff'd, No. 98-7149,

1999 WL 236897 (D.C. Cir. Mar. 16, 1999); <u>accord</u> <u>Medina v. District of Columbia,</u>, No. 97-594, 2007 WL 1656281, at *5 (D.D.C. June 6, 2007).  Plaintiff's Complaint here is best read as asserting a violation of this recognized right to have his employment-related "grievance heard and redressed."  <u>See</u> <u>Long</u>, 3 F. Supp. 2d at 1479.

In having his "grievance heard and redressed," however, plaintiff is not entitled to perfect procedures or the procedures of his choice.  "The very nature of due process," the Supreme Court has repeatedly held, "negates any concept of inflexible procedures universally applicable to every imaginable situation."  <u>Mitchell v. W.T. Grant Co.</u>, 416 U.S. 600, 610 (1974) (citation and quotation marks omitted); <u>see also</u> <u>Kremer</u> <u>v. Chemical Const. Corp.</u>, 456 U.S. 461, 483 (1982) (reaffirming that "no single model of procedural fairness, let alone a particular procedure, is dictated by the Due Process Clause").  Hence, the Constitution does not require that all official determinations be made only after a formal, judicial-type hearing.  <u>See</u> <u>Parham v. J.R.</u>, 442 U.S. 584, 608 n.16 (1979).  Nor does it mandate a specific set of procedures to govern even where formal hearings are necessary.  <u>See</u> <u>id.</u> (citing, among others, <u>Goss v. Lopez</u>, 419 U.S. 565 (1975); <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972)).

The question here is whether the OEA and the OHR complied with the due process safeguards provided by District of Columbia law when they adjudicated plaintiff's employment-discrimination claims between 1995 and 2006.  As was explained above, the OEA handled plaintiff's initial challenge to the voluntariness of his retirement.  The OEA serves as an appellate body before which aggrieved individuals can challenge D.C. agency final decisions, including reduction-in-force proposals.  <u>See</u> D.C. Code § 1-606.03(a) (2001).  Plaintiff levied such a challenge here, receiving a hearing before an administrative law judge ("ALJ") at which he and

four other teachers affected by the RIF testified.  D.C. Mem., Exh. E at 2.  The ALJ then issued

"a written decision" accompanied by findings of fact and "a statement of any further process

available to the appellant."  D.C. Code § 1-606.03(c).  After the OEA Board affirmed the ALJ's

finding that plaintiff had not proven that his retirement was involuntary, plaintiff fully availed

himself of the two-step judicial review process available to him under District of Columbia law.

Id. § 1-606.03(d).  Plaintiff challenged the OEA's final decision in D.C. Superior Court and then

contested that court's decision in the D.C. Court of Appeals.  The District's highest court affirmed

the administrative decision in a published opinion that discussed many of the legal authorities

that plaintiff again cites in his pleadings before this Court.  See Bagenstose v. D.C. Office of

Employee Appeals, 888 A.2d 1155, 1157-58 (D.C. 2005).  Plaintiff was therefore afforded all of

the process due under the District's statutory scheme, a conclusion that he cannot avoid simply by

impugning the soundness of the outcome reached in those proceedings.

 The brunt of plaintiff's dissatisfaction is directed at the manner in which the OHR

handled his 1996 complaint challenging the lawfulness of his transfer and the loss of his teaching

position.  Under District of Columbia law, the OHR is responsible for receiving, reviewing, and

investigating complaints of unlawful discrimination or retaliation in the workplace.  D.C. Code

§§ 2-1403(b), 1411.03 (2006); D.C. Mun. Regs. tit. 4, § 101.1 (2007).  Not every complaint,

however, proceeds to a full hearing.  When the OHR Director finds no probable cause to support

a plaintiff's claim of discrimination or retaliation, for instance, then the Director issues an order

dismissing the complaint.  D.C. Code § 2-1403.05(c).  The Director is likewise authorized to

make "summary determinations" based only on the information in the complaint.  D.C. Mun.

Regs. tit. 4, § 109.1.  In addition, the municipal regulations provide for an intermediate procedure

in the form of a limited hearing "before an independent hearing examiner with a subsequent decision by the Director . . . based upon the Hearing Examiner's report and recommendation." Id. § 109.7. It is against the backdrop of these procedures that the Court evaluates plaintiff's due process claim.

Plaintiff assails the OHR for, among other things, refusing to consider his September 1994 EEO complaint as the genesis of later retaliatory actions, relying on false affidavits and testimony, and preventing him from cross-examining Principal Crandall in an effort to prove that she was lying. See Compl. at 8-10 ¶¶ 3-12. With regard to the September 1994 EEO complaint, plaintiff appears to accuse the OHR of pulling a bait-and-switch -- that is, of leading him to believe that both his 1994 and February 1995 complaints could serve as the basis for a retaliation claim, and then denying him the chance to produce evidence stemming from the 1994 complaint. See D.C. Mem., Exh. G at 418. As the D.C. Superior Court observed, however, the record reveals that the OHR viewed plaintiff's September 1994 EEO complaint as simply too far removed from the lateral transfer he experienced a year later and from the RIF notice that he received almost two years later. D.C. Mem., Exh. H at 7. Indeed, the OHR had previously dismissed as untimely some of plaintiff's other discrimination claims, and it clarified in its letter denying reconsideration that, even had it considered the 1994 complaint, it would not "have found a causal connection between an event occurring in September 1994 and . . . adverse actions in September 1995 and June 1996." D.C. Mem., Exh. A at 3 n.1. The OHR's disagreement with plaintiff as to the starting point for the causation calculus does not, without more, establish that plaintiff was denied the minimum procedural safeguards required by the Constitution.

Nor can the Court say that a reasonable juror could conclude that the laundry list of other

17

deficiencies identified by plaintiff, either alone or in combination, rises to the level of a due-process violation.  Many of plaintiff's accusations -- such as his assertions that Crandall perjured herself and that the OHR Hearing Examiner "blatantly lied in her report," Compl. at 10 ¶ 11 -- are supported only by his say-so and are contradicted by the decisions of the OHR and the District of Columbia courts.  Although plaintiff complains that the Hearing Examiner improperly denied him the opportunity to cross-examine Crandall, the governing regulations afford the Examiner broad discretion in "[r]egulat[ing] the course and conduct of the hearing," including "[r]uling upon the admissibility of evidence and testimony," and "[t]aking appropriate measures to assure that there shall be no interference with the orderly conduct of the hearing."  D.C. Mun. Regs. tit. 4, § 110.4(f); see also id. § 111.  These regulations are similar to ones that govern many administrative-type proceedings.  See, e.g., Celcom Comm'n Corp. of Georgia v. FCC, 787 F.2d 609, 615 (D.C. Cir. 1986) (per curiam).  Plaintiff has not responded to the District's motion for summary judgment with any competent evidence (such as a transcript of the limited hearing) suggesting that the Hearing Examiner abused her considerable discretion in limiting the scope of questioning, let alone that such an abuse of discretion so undermined the fairness of the hearing as to deprive plaintiff of his due process rights.[5]  Indeed, faced with record evidence that the District held the hearings required by its statutes and regulations, received and reviewed the appropriate evidence, and issued reasoned written decisions subject to administrative and judicial review, plaintiff has failed to come forward with any evidence to substantiate his serious

---

[5] Plaintiff's failure to identify any procedural protection that he was denied is particularly significant because the District's regulatory scheme for adjudicating employment-discrimination claims has already been found by another court in this district to be consistent with the Due Process Clause.  See Long v. District of Columbia, 3 F. Supp. 2d 1477, 1479 (D.D.C. 1998), aff'd, No. 98-7149, 1999 WL 236897 (D.C. Cir. Mar. 16, 1999).

allegations of misconduct on the part of District officials. See, e.g., Pl.'s D.C. Opp'n at 6 ¶ 6e

("The officers of the D.C. adjudicative bodies, including the courts, routinely lie, distort

evidence, misstate the testimonies of witnesses, and ignore the applicable case law, as they seek

to protect the D.C. Government from financial liability for its wrongdoings."). These bare

allegations in plaintiff's Complaint and subsequent filings, while perhaps enough to have

survived a motion to dismiss, do not suffice to fend off the District's "well-documented motion

for summary judgment." See Lewis v. Green, 629 F. Supp. 546, 553 (D.D.C. 1986).

   *2. Title VII*

   Plaintiff's Complaint, again liberally construed, can be read as reasserting some of the

employment-discrimination claims that he litigated before the District of Columbia

administrative bodies and courts. To the extent that plaintiff seeks to reassert those claims here,

however, he runs into the primary defense interposed by the District: collateral estoppel, or issue

preclusion. That doctrine bars the relitigation of issues that were fully and necessarily decided in

a prior case between the same parties, so long as denying the losing party the chance to relitigate

the matter does not work a basic unfairness. See Martin v. Dept. of Justice, 488 F.3d 446, 454

(D.C. Cir. 2007); Oubre v. District of Columbia Dep't of Employment Servs., 630 A.2d 699, 703

(D.C. 1993). According to the District, the protracted administrative proceedings under the D.C.

Human Rights Act ("DCHRA") culminated in judgments by the D.C. courts that prevent plaintiff

from establishing necessary elements of his Title VII claims.

   The Supreme Court has held that a state administrative decision in the employment-

discrimination context is entitled to preclusive effect in a subsequent Title VII suit where that

decision has been reviewed and affirmed by the state courts. See Kremer v. Chemical Const.

Corp., 456 U.S. 461, 479-80 (1982).  But see Univ. of Tenn. v. Elliott, 478 U.S. 788, 796 (1986)

(unreviewed state administrative decisions do not have preclusive effect in Title VII suit).  Title

VII, the Court held in Kremer, did not repeal 28 U.S.C. § 1738, the statute requiring that federal

courts give full faith and credit to state-court judgments.  456 U.S. at 476.  The Court further

clarified that state-court judgments are binding for purposes of collateral estoppel and res

judicata even where the state court has affirmed the administrative determination under a

standard more deferential than de novo review.  Id. at 480-81 n.21.  Nor does the fact that the

employee's claims resolved in the state proceedings were based exclusively on state law deprive

the resulting judgment of preclusive effect.  At least where "[t]he elements of a successful

employment discrimination claim are virtually identical" to those under Title VII, id. at 479, the

state court's decision must be accorded preclusive effect under § 1738.  Such is the case here,

since the elements for proving discrimination and retaliation under the DCHRA are directly

analogous to those required under Title VII, and District of Columbia courts borrow from federal

Title VII case law in interpreting the DCHRA.  See, e.g., Psychiatric Inst. v. D.C. Comm'n on

Human Rights, 871 A.2d 1146, 1151 n.2 (D.C. 2005) (discrimination);  Carter-Obayuwana v.

Howard Univ., 764 A.2d 779, 790 (D.C. 2001) (retaliation); see also Carpenter v. Fed. Nat'l

Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999).

    Two issues resolved against plaintiff in the District of Columbia courts stand as

insuperable obstacles to his Title VII claims in this suit.  First, the D.C. Court of Appeals in 2005

affirmed the OEA's finding that plaintiff voluntarily retired in 1996, and was thus never

discharged as part of the reduction-in-force.  See Bagenstose v. D.C. Office of Employee

Appeals, 888 A.2d 1155, 1157-58 (D.C. 2005).  And because plaintiff retired voluntarily, as

conclusively determined by the highest court of the District of Columbia, he never suffered an adverse employment action, which is an element required to establish a prima facie case of either unlawful discrimination or retaliation under Title VII.  See Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (retaliation); Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (discrimination).  The D.C. Court of Appeals' judgment, in short, precludes any discrimination and retaliation claims arising from the loss of plaintiff's teaching position in 1996.

The D.C. Superior Court's 2006 decision has the same effect on plaintiff's retaliation claim arising from his 1995 transfer from the SWW to the Jefferson school.  In order to make out a prima face case of retaliation, plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his protected conduct and the adverse action.  See Woodruff, 482 F.3d at 529.  Assuming that plaintiff would be able to establish the first two elements, the Superior Court judgment affirming the OHR's ruling on causation precludes him from satisfying the third element.  The OHR actually and necessarily determined after its investigation and a limited hearing that the only protected conduct at issue was plaintiff's February 1995 OHR complaint and that, because SWW Principal Crandall did not know about that complaint, plaintiff could not demonstrate the requisite causal connection.[6]  D.C. Mem., Exh. A. at 3.  This determination was affirmed by the Superior Court,

_____

[6] The Superior Court's reasoned conclusion that plaintiff's earlier 1994 EEO complaint was too far removed to be a basis for the retaliation claim is thus entitled to preclusive effect.  But even were plaintiff entitled to relitigate his retaliation claim using the September 1994 EEO complaint as the relevant protected activity, he would face an uphill climb in satisfying the causation requirement.  For one thing, in order for temporal proximity between protected conduct and adverse action to establish causation, that proximity must be "very close" -- likely closer than the year that separated plaintiff's 1994 complaint from his transfer, or the two years that separated the complaint from the RIF.  See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (per curiam); see also Mayers v. Laborers' Health & Safety Fund of North Am., 478 F.3d 364, 369

which concluded that Crandall's live testimony before the impartial Hearing Examiner constituted substantial evidence supporting the OHR's decision and that the OHR had reasonably interpreted the DCHRA in excluding plaintiff's September 1994 EEO complaint from consideration.  D.C. Mem., Exh. H at 7-8.  Having been affirmed by a court of competent jurisdiction, the OHR's determination is entitled to preclusive effect under § 1738 and Kremer.  See 456 U.S. at 485.  Plaintiff is therefore unable to establish a prima facie case of retaliation, and the District is entitled to summary judgment on that aspect of his claim.

The Court by no means relishes applying preclusion principles to bar plaintiff, who has proceeded diligently without the assistance of counsel, from litigating his employment-discrimination claims anew in federal court.  Indeed, plaintiff may now question the wisdom of agreeing to dismiss his previous federal suit without prejudice while he exhausted his available appeals in the District of Columbia courts.  By requiring that only those administrative decisions that are reviewed by state courts be accorded preclusive effect in Title VII cases, the Supreme Court's twin decisions in Kremer and Elliott create somewhat of a preclusion trap into which experienced lawyers and pro se litigants alike can fall.  This Court cannot, however, ignore the fact that neighboring courts of competent jurisdiction have issued reasoned rulings resolving some of the very issues central to plaintiff's federal claims.  To deny those rulings preclusive effect, as the Supreme Court explained in Kremer, would not only "violate basic tenets of comity and federalism," 456 U.S. at 478, but would also signal to plaintiffs that the administrative

---

(D.C. Cir. 2007) (finding an eight-month gap between the protected activity and the adverse employment action too long to infer causation).  And to the extent that plaintiff would seek to show a causal connection via other evidence, he has not met his burden of coming forth with such evidence at the summary judgment stage.

remedies provided by the District under the DCHRA are nothing more than a prelude to eventual federal litigation.

## CONCLUSION

For the foregoing reasons, the Court grants the EEOC's motion to dismiss, grants the District's motion for summary judgment, and denies as moot plaintiff's motion to schedule a status conference.  A separate order has been posted on this date.

/s/      John D. Bates
JOHN D. BATES
United States District Judge

Dated:  August 14, 2007